**In the Matter of the Petition of Joshua S. COLLIER, in Relation to Property Registered in Certificate of Title No. 1596547 for an Order Directing Entry of a New Certificate and Declaratory Relief.**

No. A05–1178.

Supreme Court of Minnesota.

Feb. 1, 2007.

Allen E. Christy, Jr., Timothy J. Grande, Joanne Horwood Turner, Mackall, Crounse & Moore, PLC, Minneapolis, MN, for Appellant.

Arthur D. Walsh, A.D. Walsh & Associates, Woodbury, MN, for Respondent Wager.

John G. Westrick, Kirk M. Anderson, Westrick & McDowall–Nix, PLLP, St. Paul, MN, for Respondent Collier.

Edward A. Bock, Jr., Kimball Foster, Beth Asmunsen, Matthew Foli, Minneapolis, MN, for Amicus Curiae Hennepin Cty. Exam. of Titles.

## OPINION

ANDERSON, PAUL H., Justice.

Joshua Collier purchased a parcel of Torrens property with the knowledge that M & I Bank FSB had an unregistered mortgage and purchase interest in the property. After purchasing the property, Collier filed a petition in Ramsey County District Court, seeking an adjudication and declaration of rights in the property. Collier's petition named M & I as a party. M & I moved for summary judgment, and the district court granted its motion, concluding that M & I's interest in the property was superior to Collier's interest because Collier was not a good faith purchaser under Minnesota's Torrens Act. The Minnesota Court of Appeals reversed the district court, concluding that Collier's actual knowledge of M & I's unregistered interest did not preclude him from being a good faith purchaser. The court of appeals then held that Collier's interest in the property was superior to M & I's interest. We reverse.

In September 2000, Joseph Conley obtained a loan from Great Northern Mortgage Corporation. The loan was secured by a mortgage on a parcel of Torrens property Conley owned. The Torrens property subject to Great Northern's mortgage is located in Ramsey County, Minnesota, and was described in the mortgage as Lot 2, Stipe's Rearrangement. It is this property that is the subject of this action. Later in September, Great Northern assigned the mortgage and its rights in the loan to appellant M & I Bank FSB. M & I or its title company filed the mortgage with the Ramsey County Recorder's office, but did not file the mortgage with the county's Registrar of Titles.

In 2002, Conley defaulted on his loan. M & I then filed a power of attorney to foreclose on the mortgage and served notice of the foreclosure on Conley. The Ramsey County Sheriff's office held a mortgage foreclosure sale on the property and M & I purchased it for $118,000. M & I filed a Sheriff's Certificate of Sale in the Ramsey County Recorder's office, but failed to file its purchase interest with the Registrar of Titles. Shortly thereafter, respondent Joshua Collier learned of the foreclosure sale through a notice published by the Ramsey County Sheriff's office. Collier contacted M & I and offered to purchase M & I's interest in the property on behalf of a real estate investment company. M & I declined Collier's offer to purchase the property.

Collier subsequently conducted a title search on the property, and thereby learned that M & I had not filed its mortgage or purchase interest with the Ramsey County Registrar of Titles. Knowing that the property was Torrens property, Collier concluded that M & I did not have a validly recorded interest in it. Collier

then contacted Conley on his own behalf and offered to purchase any interest Conley may have had in the property. Conley agreed to sell Collier any such interest for $5,000 and conveyed his interest to Collier by a warranty deed. On the same day he received the deed from Conley, Collier obtained a loan from Dennis Wager, repayment of which was secured by a mortgage on the property Collier had just purchased from Conley. Collier then filed the Conley warranty deed and the Wager mortgage with the Registrar of Titles.

A few months later, Collier initiated this action by filing a petition for a proceeding subsequent to registration with the Ramsey County District Court. In his petition, Collier acknowledged that, based on Great Northern's assignment of its mortgage on the property to M & I and the Sheriff's Certificate of Sale, M & I claimed an interest in the property. But Collier asserted that neither the mortgage nor Great Northern's assignment of its mortgage to M & I had been properly filed and registered with the Registrar of Titles and that neither interest appeared on the property's certificate of title. Consequently, Collier asserted that M & I had no interest in the property and requested an adjudication and declaration of the rights of all parties in the property, including Wager.

In its answer to Collier's petition, M & I admitted that its mortgage had not been registered on the certificate of title. But as an affirmative defense, M & I asserted that Collier and Wager were not bona fide purchasers of the property because Collier had knowledge of M & I's interest in the property before purchasing the property from Conley.

Collier, Wager, and M & I all filed motions for summary judgment. Following a hearing, the district court issued an interlocutory order denying Collier's and Wager's motions, denying M & I's motion against Wager, and granting M & I's motion against Collier. The district court granted M & I's motion against Collier based on its interpretation of the term "in good faith" as used in Minnesota's Torrens Act, Minn.Stat. ch. 508 (2004). The court cited Minn.Stat. § 508.25 (2004), which states:

> Every person receiving a certificate of title pursuant to a decree of registration and every subsequent purchaser of registered land who receives a certificate of title *in good faith* and for a valuable consideration shall hold it free from all encumbrances and adverse claims, excepting only the estates, mortgages, liens, charges, and interests as may be noted in the last certificate of title in the office of the registrar * * *.[1]

(Emphasis added.)

In a memorandum accompanying its interlocutory order, the district court stated that the meaning of the good faith requirement in section 508.25 was "[a]t the heart of this case." The court noted that Collier had actual knowledge of M & I's mortgage interest in the property, M & I's foreclosure of the mortgage, and M & I's purchase of the property at the sheriff's sale. The court concluded that because Collier knew of M & I's interest in the property, Collier was not a good faith purchaser of Conley's interest in the property. Therefore, the court held that M & I's interest in the property was superior to any interest Collier obtained from Conley. Following

---

1. Section 508.25 also lists seven exceptions that encumber Torrens property in spite of their failure to appear on the last certificate of title. None of the exceptions applies in this case.

the court's order, Wager and M & I executed a stipulation for dismissal with prejudice, ending Wager's involvement in this case.

Collier appealed to the court of appeals, arguing that his knowledge of M & I's unregistered interest should not have affected the court's analysis. Specifically, Collier asserted that under the Torrens Act, M & I's failure to file its mortgage with the Registrar of Titles left M & I with no "effective" interest in the property of which Collier could have known.

The court of appeals reversed the district court, holding that Collier was a good faith purchaser under the Torrens Act and that his registered interest was superior to M & I's unregistered interest. *In re Collier*, 711 N.W.2d 826, 831 (Minn.App. 2006). The court's analysis began with the premise that the Torrens Act requires a mortgage interest in registered property to be filed and registered with the registrar of titles in order to encumber the property. *Id.* at 830 (citing Minn.Stat. § 508.54 (2004)). The court concluded that because M & I failed to file its mortgage on Conley's property with the Ramsey County Registrar of Titles, M & I did not have an interest in the property that affected subsequent purchasers such as Collier, and instead had only a private contract with Conley. *Id.* at 831. The court further concluded that "[a]ctual notice of a private contract is not the type of notice that prevents a purchaser from being a good-faith purchaser." *Id.* The court reasoned that Collier's actual notice of M & I's private contract with Conley was not inconsistent with his own purchase of Conley's interest in the property, because under the Torrens Act, the land was unencumbered by M & I's interest. *Id.*

M & I subsequently petitioned our court for review and we granted its petition. M & I asks us to resolve two issues on appeal: (1) whether Collier's actual notice of M & I's unregistered interest in the Torrens property precludes him from being a good faith purchaser under Minn.Stat. § 508.25; and (2) whether Collier's purchase of Conley's interest in the property for $5,000 constitutes "valuable consideration" under section 508.25.

■ On appeal from summary judgment, we determine whether there are any genuine issues of material fact and whether a party is entitled to judgment as a matter of law. *Christensen v. Milbank Ins. Co.*, 658 N.W.2d 580, 584 (Minn.2003). When the material facts are not in dispute, we review the lower court's application of the law de novo. *Leamington Co. v. Nonprofits' Ins. Ass'n*, 615 N.W.2d 349, 353 (Minn.2000). Here, the material facts are not in dispute. The parties agree that M & I did not file its mortgage or Sheriff's Certificate of Sale with the Registrar of Titles. The parties also agree that Collier purchased Conley's interest in the property with actual knowledge of M & I's interest. Accordingly, we exercise de novo review.

■ This case involves the Minnesota Torrens Act and Torrens property, and because the Torrens property system is distinct from the abstract property system, we begin our analysis with a brief overview of the two property systems and the policy underlying the Torrens system. Until Minnesota adopted the Torrens system in 1901, all real property in the state was abstract property. *Hersh Props., LLC v. McDonald's Corp.*, 588 N.W.2d 728, 733 (Minn.1999). Under the abstract system, transactions that affect real property are

recorded with the county recorder in the county where the property is located. *Id.* The documents recording the transactions become public records and are a source for prospective purchasers to ascertain the status of title. *Id.* These documents are typically summarized in a single document, called an abstract of title, so that prospective purchasers, mortgagors, mortgagees, and others may have a source to research the status of the title. *Id.* But in addition to the recorded documents, under the abstract system, a title may be affected by factors not reflected in the recorded documents. *Id.* Therefore, a prospective purchaser or mortgagee must carefully investigate a property's history and condition in order to ascertain marketability of the title to that property.

■ In 1901, the Minnesota legislature adopted an alternative to the abstract system—the Torrens system. *See* Act of Apr. 11, 1901, ch. 237, 1901 Minn. Laws 348. The Torrens Act is codified at Minn.Stat. ch. 508. Under the Torrens system, a party seeking to register an ownership interest in property applies for a court adjudication of ownership and a court decree that converts abstract property into Torrens property. *See* Minn.Stat. § 508.22 (2004). A court-appointed officer, the examiner of titles, oversees the registration process. Minn.Stat. §§ 508.12, 508.13 (2004). After the court adjudicates ownership and any other existing interests in the property, the registrar of titles creates a certificate of title, which is issued to the owner. *See* Minn.Stat. §§ 508.34, 508.35 (2004). After the issuance of a certificate of title, any conveyance, lien, instrument, or proceeding that would affect the title to the now registered Torrens

property must be filed and registered with the registrar of titles in the county where the property is located in order to affect the title to the Torrens property. Minn. Stat. § 508.48 (2004).

■ We have said that "[t]he purpose of the Torrens system was to create a title registration procedure intended to simplify conveyancing by eliminating the need to examine extensive abstracts of title by issuance of a single certificate of title." *Hersh Props.*, 588 N.W.2d at 733. Under the Torrens system, time-consuming and expensive title searches, which characterize the abstract system, are alleviated because the purchaser of Torrens property may, subject to limited exceptions, determine the status of title by inspecting the certificate of title.[2] *See id.*

M & I argues that Collier's actual knowledge of M & I's unregistered mortgage and subsequent foreclosure on the property negates the good faith requirement in section 508.25, and therefore, its interest in the property is superior to Collier's. Collier argues that his actual knowledge of M & I's unregistered interest does not affect his status as a good faith purchaser, making his interest superior to M & I's.

Collier correctly asserts that Minnesota's Torrens Act places great emphasis on the acts of filing and registration. The Torrens Act provides that "[e]very conveyance, lien, attachment, order, decree, or judgment, or other instrument or proceeding, which would affect the title to unregistered land under existing laws, if recorded * * * shall, in like manner, affect the title to registered land *if filed and registered.*" Minn.Stat. § 508.48 (emphasis added).

---

**2.** For a thorough review of the history, policy, and statutory scheme underlying Minnesota's Torrens Act, see *Hersh Props.*, 588 N.W.2d at 733–34.

"All interests in registered land, less than an estate in fee simple, *shall be registered* by filing with the registrar * * *." Minn. Stat. § 508.49 (2004) (emphasis added). When conveying, mortgaging, leasing, or otherwise dealing with registered land, "[t]he act of registration shall be the operative act to convey or affect the land." Minn.Stat. § 508.47, subd. 1 (2004). Minnesota Statutes § 508.54, which specifically addresses mortgages, requires that mortgage interests in Torrens property "be registered and take effect upon the title only from the time of registration."

■ Although the Torrens Act makes clear that the acts of filing and registration are critical in the Torrens system, M & I's failure to file its interests in the property with the registrar of titles does not end our inquiry under the Torrens Act. Section 508.25 also provides that "every subsequent purchaser of registered land who receives a certificate of title *in good faith* and for a valuable consideration shall hold it free from all encumbrances and adverse claims" except from interests noted on the certificate of title. (Emphasis added.) Based on this language, we conclude that our inquiry must focus on whether Collier's actual knowledge of M & I's unregistered interest in the property affects his status as a good faith purchaser under section 508.25.

The relevant language of section 508.25 remains unchanged from when the Torrens Act was first codified in Minnesota. *See* Minn. Rev. Laws § 3393 (1905). Although the legislature never defined the meaning of good faith in that section, we conclude that good faith must mean something; if not, the language would be rendered a nullity. *See* Minn.Stat. § 645.17(2) (2004) (directing courts to presume that the legislature intends an entire statute to be "effective and certain"). Our analysis indicates that since the passage of the Torrens Act, the meaning of good faith has been established through both case law and real estate practice. As far back as 1913, we presumed that the good faith language in the Torrens Act contained a notice or knowledge component, when we stated that "one who purchases from the registered owner for a valuable consideration, in reliance upon [a Torrens] judgment and *without notice or anything to put him on inquiry,* takes the title free from all 'incumbrances and adverse claims.'" *Henry v. White*, 123 Minn. 182, 185, 143 N.W. 324, 326 (1913) (emphasis added) (quoting Minn. Rev. Laws § 3393).

In 1929, we further discussed the relationship between actual notice and unregistered interests in Torrens property in *In re Juran*, 178 Minn. 55, 226 N.W. 201 (1929). The facts in *Juran* were as follows. Peterson owned Torrens property that was encumbered by a registered mortgage. 178 Minn. at 57, 226 N.W. at 201. Peterson executed a contract for deed and a warranty deed on the property to separate parties, neither of which documents was filed and registered with the registrar of titles. *Id.* The warranty deed grantee subsequently executed a warranty deed to Juran, subject to the contract for deed. *Id.* Later, Kroening registered a writ of attachment against the property with the registrar of titles pursuant to a legal action he brought against Peterson. *Id.* Nearly two months later, Peterson told Kroening's attorney that he had sold the property. 178 Minn. at 60–61, 226 N.W. at 203. A few months later, Kroening filed with the registrar of titles a certified copy of a judgment rendered in the action in which the attachment had been issued, as well as a certified copy of a judgment he had obtained in a second action against

Peterson. 178 Minn. at 57, 226 N.W. at 201. Kroening then bought the property at a sheriff's sale, prompting Juran and the contract for deed grantees to challenge Kroening's rights in the property. *Id.* They argued that Kroening had constructive notice that Peterson no longer had a full interest in the property because others were living on it. 178 Minn. at 60, 226 N.W. at 202. As part of our decision in *Juran* we stated that

> under [Torrens] law possession of registered land is not notice of any rights under an unregistered deed or contract for deed. [The Torrens] act abrogates the doctrine of constructive notice except as to matters noted on the certificate of title. *We think however that it does not do away with the effect of actual notice,* although it undoubtedly imposes the burden of proving such notice upon the one asserting it.

*Id.* (emphasis added) (citation omitted).

We concluded in *Juran* that there was no evidence in the record suggesting that Kroening had actual notice of the property's occupation before he registered the writ of attachment, and we therefore held that Kroening's rights under the attachment, judgment, and execution sale were superior to Juran's and the contract for deed grantees' interests. 178 Minn. at 60–61, 226 N.W. at 202–03. But we also concluded that Kroening's rights in the property under the judgment in the second action were inferior and subordinate to Juran's and the contract for deed grantees' rights because Peterson told Kroening's attorney that he had sold the property

before the judgment in the second action was filed and registered with the registrar of titles. 178 Minn. at 60–61, 226 N.W. at 203.

Collier argues that our statement in *Juran* that the Torrens system does not do away with the effect of actual notice is mere dictum and should be ignored. We disagree. In *Juran,* we relied on the actual notice rule to conclude that Kroening's rights under the second action were inferior.[3] 178 Minn. at 60–61, 226 N.W. at 202–03. Furthermore, since *Juran* was decided in 1929, our court has referenced and relied on *Juran's* "actual notice" pronouncement to varying degrees. *See, e.g., Kane v. State,* 237 Minn. 261, 269, 55 N.W.2d 333, 338 (1952) (quoting the *Juran* syllabus, which contains actual notice language); *Cook v. Luettich,* 191 Minn. 6, 8, 252 N.W. 649, 650 (1934) (quoting *Juran* syllabus and finding appellant had actual knowledge).

■ In the past 20 years, three court of appeals cases have shown that court's acceptance and reliance on *Juran's* actual notice rule. While these cases do not constitute precedent for the purpose of our court's jurisprudence, *McClain v. Begley,* 465 N.W.2d 680, 682 (Minn.1991), their reasoning is relevant to the extent it informs us about the role of actual knowledge in the Torrens system as it is practiced in Minnesota. In *Nolan v. Stuebner,* a published opinion, the appellants bought Torrens property subject to an easement that did not appear on their warranty deed. 429 N.W.2d 918, 921–22 (Minn.App. 1988), *rev. denied* (Minn. Dec. 16, 1988).

---

3. Our syllabus in *Juran* supports this conclusion. The syllabus states that "[t]he evidence will not sustain a finding that [Kroening] had actual notice of any unregistered rights before the registration of his attachment, but does sustain [a] finding that *he had such notice before registering a judgment obtained in another and later action.*" 178 Minn. at 56, 226 N.W. at 201 (emphasis added).

The certificate of title made reference to the easement, but it appeared the easement may have encumbered a parcel of land conveyed to a different party. *Id.* The court of appeals concluded that even if the certificate was ambiguous as to the placement of the easement, the appellants had record notice of the easement through the language on the certificate and actual notice after obtaining a title opinion in which an attorney confirmed the existence of the easement. *Id.* at 923. The court held that the appellants were not bona fide purchasers because of their record notice, provided by the language on the certificate, and their actual notice, provided by the title opinion. *Id.*

In two unpublished opinions, the court of appeals determined that the good faith requirement in Torrens law is not met if purchasers of Torrens property have actual knowledge of an unregistered interest. In *5th Street Ventures, LLC v. Frattallone's Hardware Stores, Inc.,* the original owner of Torrens property that included a building agreed to allow the building's lessee, Frattallone's, to use a common area for storage, but the lease was never filed with the registrar of titles. No. A03–2036, 2004 WL 1878822, at *1 (Minn.App. Aug. 24, 2004). 5th Street purchased the property and commenced an unlawful detainer action against Frattallone's, arguing that Frattallone's was not authorized to use the common area. *Id.* The district court granted summary judgment to Frattallone's, concluding that the lease was enforceable as amended, even though it was not filed and registered with the registrar of titles. *Id.* at *2. The court of appeals reversed, holding that genuine issues of material fact existed. *Id.* at *2–3. The court concluded that if 5th Street "had actual knowledge of an unrecorded lease at the time of purchase, it cannot later seek the protection of the Torrens statute as a good-faith purchaser with no notice." *Id.* at *3. The case was then remanded to the district court to determine whether 5th Street had actual knowledge of the unrecorded lease. *Id.*

In *In re Willmus,* the court of appeals also concluded that actual notice of an interest in Torrens property can be determinative of the status of title. C0–95–1136, 1996 WL 33095 (Minn.App. Jan. 30, 1996), *rev. denied* (Minn. Mar. 28, 1996). In *Willmus,* the Doughertys bought a tract of Torrens property encumbered by an easement for the benefit of the appellant, but the easement did not appear on the Doughertys' certificate of title. *Id.* at *1. The appellant commenced an action, seeking an order to require the registrar of titles to enter a memorial, so that the certificate of title would reflect the easement. *Id.* The court of appeals recognized the easement's existence, but held that on remand, the appellant needed to prove that the Doughertys had actual knowledge of the easement in order to overcome the good faith clause in the Torrens Act. *Id.* at *2–3.

It also appears that real estate practitioners in Minnesota have come to support and rely on our precedent that actual notice of another's unregistered interest in Torrens property can negate the good faith requirement found in section 508.25. For example, in his amicus brief, Hennepin County Examiner of Titles Edward A. Bock, Jr.,[4] asserts that our precedent in *Juran* "has provided sound guidance for

---

4. Bock oversees the registration of Torrens property in Hennepin County, which is the largest county in the state in terms of population and has more Torrens property than any other county in the state.

the operation of the Torrens system for over 75 years." Bock claims that some degree of flexibility makes the Torrens Act more useful and efficient. He asserts that if a prospective purchaser could purchase Torrens property and then file his purchase documents with the registrar of titles when he has actual notice of another's unregistered interest, it "would establish a pure 'race' situation providing no benefit to good faith purchasers." Bock claims that such a system would "encourag[e] unscrupulous persons to seek opportunities to profit at the expense of others." He also asserts that our failure to uphold our ruling in *Juran* would create business risks. He claims that in the ordinary course of business, it may be days between a real estate closing and filing of the documents with the registrar of titles. During this interval, one who knows of the closing could take advantage of the delay.

We conclude that Minnesota courts have relied on our precedent in *Juran*, and real estate practitioners have accepted the proposition that to be a good faith purchaser of Torrens property, a purchaser cannot have actual knowledge of previous, unregistered interests. *See also* 25 Julie A. Bergh, Minnesota Practice—Real Estate Law ch. 3, § 3.23(b) (Eileen M. Roberts ed., 2007 ed.) ("[An] exception to the general rule that unregistered instruments do not affect registered land arises when there is no intervening bona fide purchaser for value and there is actual knowledge of the unregistered interest."). Thus, we conclude that the actual notice language in *Juran* is not merely dictum, but rather represents long-established precedent of our court.

We also note that we have applied principles of equity when a result under the Torrens Act violates notions of justice and good faith. *See Finnegan v. Gunn*, 207 Minn. 480, 292 N.W. 22 (1940). In *Finnegan*, we concluded that "[n]othing in the Torrens system indicates that the ancient concepts of equity are not applicable" under certain circumstances. 207 Minn. at 482, 292 N.W. at 23. *See also Mill City Heating & Air Conditioning Co. v. Nelson*, 351 N.W.2d 362, 365 (Minn.1984) (requiring a subcontractor to provide prelien notice of a mechanic's lien to purchasers of Torrens property who had not yet filed their ownership interest with the registrar of titles, because failure to do so produced an "unfair and unreasonable" result). But, because equitable concepts are not necessary to our holding in this case, we mention this precedent only as an additional point of reference for our ultimate decision.

Collier also argues that even if we hold that the actual notice language in *Juran* is not mere dictum, there is other Minnesota case law that would permit us to refashion our definition of actual notice such that we can and should conclude that he is a good faith purchaser of the property in accordance with section 508.25. In support of this corollary argument, Collier relies on language from *Comstock & Davis, Inc. v. G.D.S. & Associates*, where the court of appeals stated that actual notice "requires conveying knowledge of a signed, enforceable agreement." 481 N.W.2d 82, 85 (Minn.App.1992). Collier relies on this language in *Comstock* when he asserts that M & I's unregistered mortgage interest is not an enforceable agreement and is consequently not capable of negating his good faith purchase. While *Comstock* did not involve Torrens property, the language quoted above was cited in *In re Alchemedes/Brookwood, Ltd. P'ship*, 546 N.W.2d 41, 42 (Minn.App.1996), *rev. denied* (Minn. June 7, 1996). In *Alchemedes*,

the court of appeals held that Midwest Federal, the owner of a mortgage on Torrens property, which included an apartment complex, had neither actual notice nor actual knowledge of two leases.[5] *Id.* at 42–43. The leases did not appear on the certificate of title, *id.* at 41, and Midwest Federal had no outside knowledge that the leases existed. *Id.* at 43. Accordingly, the court of appeals did not have to determine whether the leases would be enforceable if Midwest Federal had actual notice or knowledge of the leases. Because there was no actual notice at issue in these cases, we find Collier's citation to the language and reasoning used by the court of appeals in *Comstock* and *Alchemedes* unpersuasive.

 We conclude that under section 508.25, a purchaser of Torrens property who has actual knowledge of a prior, unregistered interest in the property is not a good faith purchaser. Here, Collier gained actual knowledge of M & I's interest in the property through the Ramsey County Sheriff's office's publication of the notice of foreclosure sale and through his subsequent negotiations with M & I to purchase the property. We also conclude that Collier's knowledge constitutes actual notice, and since *Juran* was decided in 1929, the law in Minnesota has prevented a prospective purchaser with actual notice of a superior interest in Torrens property from becoming a good faith purchaser. In the years after *Juran*, the legislature has not chosen to alter the relevant language in section 508.25 or define good faith.

Moreover, Minnesota courts have relied on our precedent, and real estate practitioners have accepted and applied the foregoing principles without apparent difficulties. We have stated that "[w]e are extremely reluctant to overrule our precedent under principles of stare decisis" and require a "compelling reason" to do so. *State v. Lee,* 706 N.W.2d 491, 494 (Minn.2005) (citing *Oanes v. Allstate Ins. Co.,* 617 N.W.2d 401, 406 (Minn.2000)). The facts in this case offer no compelling reason to overrule our precedent. Accordingly, we conclude that M & I's interest in the subject property is superior to Collier's interest.

In rendering this decision, we decline any entreaty by M & I and amicus to define the outer contours of actual notice; rather, we limit our holding to the facts of this case. Also, because we conclude that Collier is not a good faith purchaser, we do not reach the issue of whether Collier's purchase of Conley's interest in the property for $5,000 constitutes "valuable consideration" under section 508.25.

Based on the foregoing analysis, we hold that the district court properly granted summary judgment in favor of M & I, and that the court of appeals erred when it reversed the district court's ruling on M & I's summary judgment motion. Therefore, we reverse and remand to the district court for further proceedings consistent with this opinion.

Reversed.

---

5. The mortgage instrument did state that the mortgage was subject to "unrecorded leases," but the court of appeals concluded that Midwest Federal could not gain actual notice from the reference because Minn.Stat. § 508.60 (2004) only requires leases of three years or more to appear on a certificate of title. 546 N.W.2d at 42–43. Even though the leases in question were for more than three years, the mortgage owner could reasonably conclude that the referenced leases were for less than three years, and therefore, the court held that Midwest Federal had no actual notice. *Id.*