*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1753**

Ryan John Nordell, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed August 10, 2015
Affirmed
Cleary, Chief Judge**

Dakota County District Court
File No. 19WS-CV-13-991

Jeffrey S. Sheridan, Sheridan & Dulas, P.A., Eagan, Minnesota (for appellant)

Lori Swanson, Attorney General, Rory C. Mattson, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Cleary, Chief Judge; Hudson, Judge; and Worke, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CLEARY**, Chief Judge

Appellant Ryan John Nordell challenges the district court's order sustaining the revocation of his driver's license. Nordell argues that (1) the officer did not have an

adequate basis for initiating a traffic stop of his car; (2) his field sobriety test results were inadmissible because no exception to the warrant requirement applied; (3) his breath test results were inadmissible because no exception to the warrant requirement applied; (4) the officer did not vindicate Nordell's right to consult with counsel before Nordell submitted to chemical testing; and (5) the criminal test refusal statute is unconstitutional because it violates the right to due process and the doctrine of unconstitutional conditions as applied to Fourth- and Fifth-Amendment rights. We affirm.

**FACTS**

On June 18, 2013, at approximately 10:30 p.m., Officer Nels Engstrom initiated a traffic stop of a car driven by appellant Ryan Nordell. Officer Engstrom testified at trial that he had observed the car begin to turn left but then suddenly turn right without signaling. When Officer Engstrom approached Nordell's car, he smelled alcohol on Nordell, noticed Nordell's eyes were bloodshot and watery, and noticed Nordell's speech was slightly slurred. Nordell admitted to Officer Engstrom that he had consumed alcohol before driving.

Officer Engstrom asked Nordell to exit his car to perform field sobriety tests. Nordell's performance on the field sobriety tests yielded several "clues of impairment." Officer Engstrom then administered a preliminary breath test, which Nordell failed. Officer Engstrom arrested Nordell for driving while impaired.

At the police department, Officer Engstrom read Nordell the Minnesota implied-consent advisory. Officer Engstrom asked Nordell if he understood and Nordell said he

did. Upon Nordell's request to consult with an attorney, Officer Engstrom provided Nordell with a telephone and telephone books at 11:08 p.m. After making several phone calls, Nordell reached an attorney by phone at about 11:40 p.m. Eight or nine minutes into Nordell's conversation with the attorney, Officer Engstrom told Nordell he "would have to start wrapping things up" because he had had phone privileges for over 40 minutes by that point. Nordell ended his phone call at 11:49 p.m. Officer Engstrom then asked Nordell if he would submit to a breath test and Nordell said he would. The breath test revealed an alcohol concentration of .12.

The district court concluded that the traffic stop was based upon reasonable, articulable suspicion; that Nordell's right to counsel was vindicated; and that Nordell had voluntarily consented to the chemical breath test. Therefore, the court admitted the results of the field sobriety tests, preliminary breath test, and chemical breath test. Based upon this evidence, the court sustained the revocation of Nordell's driver's license. Nordell appeals.

## DECISION

Nordell's arguments on appeal are premised on the prohibition against unreasonable searches and seizures in the United States and Minnesota Constitutions. U.S. Const. amend. IV; Minn. Const. art I, § 10. "[T]he Fourth Amendment does not proscribe all searches and seizures, but only those that are unreasonable." *Skinner v. Ry. Labor Execs. Ass'n*, 489 U.S. 602, 619, 109 S. Ct. 1402, 1414 (1989). Warrantless

searches are per se unreasonable, subject to limited exceptions. *State v. Othoudt*, 482 N.W.2d 218, 222 (Minn. 1992).

## I.    Basis for Traffic Stop

Nordell argues that Officer Engstrom did not have an adequate basis to initiate a traffic stop. An officer may conduct a brief investigatory motor vehicle stop if the officer has reasonable, articulable suspicion of criminal activity. *State v. Munson*, 594 N.W.2d 128, 136 (Minn. 1999) (citing *Terry v. Ohio*, 392 U.S. 1, 20-22, 88 S. Ct. 1868, 1879-80 (1968)). The officer's suspicion must be more than a hunch, but even an insignificant traffic violation can be sufficient to establish an objective basis for a stop. *State v. George*, 557 N.W.2d 575, 578 (Minn. 1997); *see also State v. Johnson*, 444 N.W.2d 824, 825-26 (Minn. 1989).

"In determining whether a stop is justified, we consider the totality of the circumstances and acknowledge that trained law enforcement officers are permitted to make inferences and deductions that would be beyond the competence of an untrained person." *State v. Richardson*, 622 N.W.2d 823, 825 (Minn. 2001). The district court must "analyze the testimony of the officer and determine whether, as a matter of law, his observations provided an adequate basis for the stop." *Berge v. Comm'r of Pub. Safety*, 374 N.W.2d 730, 732 (Minn. 1985). This court reviews the district court's findings for clear error, but reviews the determination of reasonable suspicion, as it relates to traffic stops, de novo. *In re Welfare of G.M.*, 560 N.W.2d 687, 690 (Minn. 1997).

Officer Engstrom testified that he observed Nordell initially begin to turn left off of highway 66, but then observed Nordell suddenly turn right, without using his turn

signal for either turn. The district court relied upon Officer Engstrom's testimony to find that Officer Engstrom observed Nordell fail to signal a turn, which is a traffic infraction under Minn. Stat. § 169.19, subd. 5 (2014). The district court stated that it found Officer Engstrom "credible and clear that he observed a traffic violation." Nordell argues that the squad car video shows that there was no traffic violation, and that the district court clearly erred by finding that the video "does not contradict [Officer Engstrom's] testimony."

Our review of the video is inconclusive. However, there is nothing in the video—or in the remainder of the record—inconsistent with Officer Engstrom's testimony. The district court did not clearly err by finding that Officer Engstrom observed Nordell fail to use his turn signal.

An officer's observation of a failure to use a turn signal, in violation of Minn. Stat. § 169.19, may establish reasonable suspicion adequate to justify a traffic stop. *See State v. Doebel*, 790 N.W.2d 707, 709 (Minn. App. 2010) (upholding stop based on failure to use turn signal when changing lanes), *review denied* (Minn. Jan. 26, 2011). We conclude that the district court did not err in determining that Officer Engstrom had reasonable suspicion for an investigatory motor vehicle stop.

## II.    Field Sobriety Tests

Before the district court, Nordell requested suppression of the field sobriety tests on the basis that field sobriety tests are searches that must be supported by probable cause and a warrant or warrant exception. Nordell argues that *Missouri v. McNeely*, 133 S. Ct.

1552 (2013) rendered Minnesota law regarding the admissibility of field sobriety tests unconstitutional. This court reviews questions of law de novo. *In re Collier*, 726 N.W.2d 799, 803 (Minn. 2007).

Field sobriety tests need only be supported by reasonable, articulable suspicion that the driver is impaired. *See State, Dept. of Pub. Safety v. Juncewski*, 308 N.W.2d 316, 321 (Minn. 1981) (holding that an officer appropriately administered field sobriety tests and a preliminary breath test because the officer had reasonable, articulable suspicion that the person had been driving while impaired); *State v. Klamar*, 823 N.W.2d 687, 696 (Minn. App. 2012) (determining that the officer's observation of two indicia of intoxication constituted reasonable, articulable suspicion to justify field sobriety tests and preliminary breath testing). The district court admitted the test results on that basis.

*McNeely* dealt specifically with the application of the exigent-circumstances exception to a warrantless blood test. A blood test, "which involve[s] a compelled physical intrusion beneath [a suspect's] skin and into his veins," is subject to the Fourth-Amendment warrant requirement. *McNeely*, 133 S. Ct. at 1558. Although *McNeely* clarified the Fourth Amendment as applied to tests subject to the warrant requirement, *McNeely* does not address whether field sobriety tests are subject to the warrant requirement. Also, the Minnesota Supreme Court has distinguished between blood tests and other types of tests that are materially less invasive than blood testing. *See State v. Bernard*, 859 N.W.2d 762, 768 n.6 (Minn. 2015).

*McNeely* did not overrule Minnesota law requiring only articulable suspicion to administer field sobriety tests. Although Nordell's characterization of field sobriety tests as warrant-protected Fourth Amendment searches was creative and thoughtfully argued, it does not account for the current state of the law in Minnesota, which we are obliged to follow. The district court did not err by admitting Nordell's field sobriety test results.

### III. Exception to Warrant Requirement for Breath Test

A chemical breath test constitutes a search under the Fourth Amendment to the United States Constitution and therefore requires a warrant or an exception to the warrant requirement. *Skinner*, 489 U.S. at 616-17, 109 S. Ct. at 1412-13. Nordell argues that the district court did not establish that any exception to the warrant requirement applies to his breath test.

One of the established exceptions to the warrant requirement is consent to the search. *State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043-44 (1973)). For consent to be valid, the state must prove by a preponderance of the evidence that the defendant freely and voluntarily consented. *State v. Brooks*, 838 N.W.2d 563, 570 (Minn. 2013). Voluntary consent is given "without coercion or submission to an assertion of authority" such that a reasonable person would feel free to decline law enforcement's requests or otherwise terminate the encounter. *State v. Dezso*, 512 N.W.2d 877, 880 (Minn. 1994). Voluntariness is determined by the totality of the circumstances, "including the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *Diede*, 795 N.W.2d at 846 (quotations omitted). This court reviews the district

court's finding of voluntariness for clear error, which occurs when "we are left with the definite and firm conviction that a mistake occurred." *Id.* at 846-47.

The district court's brief analysis of the consent exception emphasized that Nordell had the opportunity to consult with an attorney and that there was no indication that Nordell did not understand the implied consent advisory. Additionally, Nordell was not subject to repeated police questioning or an extended period in custody. These facts are in line with the facts that the supreme court relied upon to find consent in *Brooks*. 838 N.W.2d at 571-72.

Nordell argues that his consent was not voluntary because (1) he "was told that Minnesota law required him to take the test and that his refusal . . . would result in a prosecution for a separate, more serious offense" and (2) *Brooks* is contrary to *Bumper v. North Carolina*, 391 U.S. 543, 88 S. Ct. 1788 (1968). *Brooks* held that "a driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse." 838 N.W.2d at 570. Also, *Brooks* distinguished *Bumper* on the basis that, in *Bumper*, "in effect . . . the [person] had no right to refuse the search," whereas, under Minnesota implied-consent law, "[i]f a driver refuses the test, the police are required to honor that refusal and not perform the test." *Id.* at 571. The district court did not clearly err by concluding that the consent exception applied to Nordell's breath test.

## IV. Right to Counsel

The Minnesota Constitution gives the accused a right to counsel in criminal prosecutions. Minn. Const. art. I, § 6. *Friedman v. Comm'r of Pub. Safety* held that

Article I, section 6 guarantees DWI arrestees a "limited right to counsel within a reasonable time before submitting to testing." 473 N.W.2d 828, 835 (Minn. 1991). This right to counsel is vindicated if an arrestee is "provided with a telephone prior to testing and given a reasonable time to contact and talk with counsel." *Id.* at 835 (quotation omitted). Because of the evanescent nature of DWI evidence, police may be justified in limiting the duration of a DWI arrestee's attorney consultation. *See id.* at 834 (citing *State v. Spencer*, 750 P.2d 147 (Or. 1988)). We review de novo whether a defendant's right to counsel was vindicated. *State v. Slette*, 585 N.W.2d 407, 409 (Minn. App. 1998).

The record in this case leads us to conclude that Nordell had a reasonable opportunity to consult with an attorney. Officer Engstrom gave Nordell approximately 40 minutes to contact an attorney, during which time he made several phone calls to find attorneys' phone numbers. Once Nordell had reached an attorney, he spoke with the attorney for eight or nine minutes before Officer Engstrom told him he was willing to give him a couple more minutes "and then we would have to start wrapping things up." By the time Officer Engstrom instructed Nordell to start wrapping it up, Nordell had moved on from asking for advice about the test to asking whether the attorney thought he should contact additional attorneys for advice. Officer Engstrom's instruction to "wrap it up" did not specifically state how much time Nordell had left, nor did it imply that Nordell had to finish his conversation immediately. Nordell spoke with the attorney for approximately two more minutes after Officer Engstrom's instruction, during which time Nordell gave his contact information to the attorney and thanked the attorney for his

9

advice. Officer Engstrom's limit on Nordell's attorney consultation was reasonable and did not prevent Nordell from exercising his right to counsel.

## V. Constitutionality of Test-Refusal Statute

Nordell argues that the criminal test-refusal statute is unconstitutional because the criminalization of test refusal violates the right to due process of law and places unconstitutional conditions upon the exercise of his Fourth-Amendment and Fifth-Amendment rights. Published Minnesota cases have addressed the constitutional arguments that Nordell raises.

### A. Due process

*Bernard* forecloses the argument that the criminalization of test refusal violates the right to due process of law. *Bernard* held that there is no fundamental right to refuse a warrantless breath test because it is a constitutional search under the search-incident-to-arrest exception, and applied a rational basis review to the question of whether the criminal test-refusal statute violated due process rights. The court in *Bernard* further concluded that the criminal test-refusal statute survived a rational basis review of constitutionality and therefore does not violate the right to due process. 859 N.W.2d at 773.

### B. Unconstitutional-conditions doctrine

"The unconstitutional-conditions doctrine is a creature of federal law that may, in some situations, be invoked to protect or vindicate a constitutional right." *Stevens v.*

*Comm'r of Pub. Safety*, 850 N.W.2d 717, 723 (Minn. App. 2014). The Minnesota Supreme Court has explained the doctrine as follows:

> [A]s a general rule, the state, having power to deny a privilege altogether, may grant it upon such conditions as it sees fit to impose. But the power of the state in that respect is not unlimited, and one of the limitations is that it *may not impose conditions which require the relinquishment of constitutional rights*. If the state may compel the surrender of one constitutional right as a condition of its favor, it may, in like manner, compel a surrender of all. It is inconceivable that guaranties embedded in the Constitution of the United States may thus be manipulated out of existence.

*State v. Netland*, 762 N.W.2d 202, 211 (Minn. 2009) (emphasis added), *abrogated in part by McNeely*, 133 S. Ct. at 1552, *as recognized in Brooks*, 838 N.W.2d at 567 (quoting *Frost v. R.R. Comm'n of Cal.*, 271 U.S. 583, 593-4, 46 S. Ct. 605, 607 (1926)). "The doctrine is properly raised only when a party has successfully pleaded the merits of the underlying unconstitutional government infringement." *Id.* In order to succeed on this claim, Nordell would have to establish that the criminal test-refusal statute compels him to relinquish either his Fourth- or Fifth-Amendment rights. *See id.*

### 1. Fourth Amendment

*State v. Bennett*, ___ N.W.2d ___, ___, No. A14-1813, slip op. at 8 (Minn. App. July 27, 2015), addresses the argument that the criminalization of a breath test refusal violates the doctrine of unconstitutional conditions, as applied to the Fourth Amendment. *Bennett* holds that the criminal test-refusal statute does not place an unconstitutional condition upon the exercise of Fourth-Amendment rights, at least as it pertains to the refusal to take a breath test. *Id.*; *cf. Stevens v. Comm'r of Public Safety*, 850 N.W.2d 717,

11

724 (Minn. App. 2014) (holding that the *implied-consent statute* does not place an unconstitutional condition upon the exercise of Fourth-Amendment rights). *Bennett* concludes that the unconstitutional-conditions doctrine requires that the driver "establish that the criminal test-refusal statute authorizes an unauthorized search." *Bennett*, slip op. at 8 (citing *Netland*, 762 N.W.2d at 212). Because *Bernard* held that a warrantless breath search would have been constitutional as a search incident to arrest, 859 N.W.2d at 767, *Bennett* holds that the test-refusal statute does not authorize an unauthorized search and the unconstitutional-conditions doctrine does not apply.

## 2. Fifth Amendment

In the alternative, Nordell argues that Minnesota's criminal test-refusal statute places an unconstitutional condition upon the Fifth-Amendment right against self-incrimination because it leaves a DWI arrestee no option to avoid self-incrimination: the person must choose between either (a) incriminating themselves of driving while intoxicated by submitting to a chemical alcohol concentration test or (b) incriminating themselves under the criminal test-refusal statute by refusing to submit to the test.

However, *McDonnell v. Comm'r of Pub. Safety*, 473 N.W.2d 848, 855 (Minn. 1991), forecloses the argument that the criminalization of test refusal violates the unconstitutional-conditions doctrine, as applied to the Fifth Amendment. As discussed above, a necessary element of an unconstitutional-conditions challenge is proving that there is an underlying constitutional violation. *Bennett*, slip op. at 8 (citing *Netland*, 762 N.W.2d at 211); *see also Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 286, 118 S.

Ct. 1244, 1252 (1998) (stating that it was unnecessary to address the unconstitutional-conditions doctrine, as applied to the Fifth Amendment, where the challenged procedures did not violate the Fifth-Amendment privilege against self-incrimination). *McDonnell* held that the criminal test-refusal statute does not violate the Fifth Amendment because "[t]he fact that certain individuals may face criminal charges for refusing to undergo testing in no way *compels* those individuals to refuse." 473 N.W.2d at 855-56 (emphasis added). Because *McDonnell* held that the criminal test-refusal statute does not violate the Fifth Amendment, the criminal test-refusal statute does not impose an unconstitutional condition upon the exercise of Fifth-Amendment rights. *Bernard*, *Bennett*, and *McDonnell* foreclose all of Nordell's constitutional challenges to the criminal test-refusal statute.

**Affirmed.**