## IN RE APPLICATION OF MARY JURAN FOR CERTIFICATE OF TITLE.
### H. KROENING, APPELLANT.[1]

June 21, 1929.

No. 27,399.

[1]Reported in 226 N. W. 201.

56

*Charles J. Mullan,* for appellant.

*Albert J. Mueller,* for Mary Juran and Lewis and Mildred Fried, respondents.

Taylor, C.

The facts so far as necessary to state them are as follows: Alfred J. Peterson was the owner of a house and lot in the city of St. Paul under a certificate of title issued to him in 1920 under the Torrens law, subject to a mortgage of $2,200 duly registered with the registrar of titles. On March 20, 1923, Peterson executed a contract for a deed to Lewis and Mildred Fried, husband and wife, under which they took possession of the property and ever since have resided thereon, but they never registered the contract with the registrar of titles. On October 9, 1925, Peterson executed a warranty deed of the property to Anna M. Scott, subject to the mortgage and the contract with the Frieds. On January 13, 1926, Anna M. Scott executed a warranty deed of the property to Mary Juran subject to the mortgage and the contract with the Frieds. Neither of these deeds was registered with the registrar of titles. On January 16, 1928, H. Kroening registered with the registrar of titles a writ of attachment issued in an action brought by him against Peterson and under which he had attached the property. On May 12, 1928, Kroening filed with the registrar of titles a certified copy of a judgment for the sum of $1,849.75 rendered in the action in which the attachment had been issued, and also a certified copy of a judgment for the sum of $1,973.80 which he had obtained in a second action against Peterson. Thereafter an execution was issued on the first judgment under which the sheriff levied upon the property, and on May 31, 1928, a certified copy of the execution and levy was duly registered with the registrar of titles. On July 28, 1928, the sheriff sold the property under the execution to Kroening for the sum of $1,800, and the sheriff's certificate of sale was duly registered with the registrar of titles. Thereafter Mary Juran brought this action in which she asks that the certificate issued to Peterson be canceled; that in lieu thereof a certificate of title be issued to her subject only to the mortgage and the contract with the Frieds; and that Kroening be adjudged to have no right, title or interest in the property or lien thereon.

The Frieds interposed an answer in which they joined with plaintiff and asked that the relief sought by her be granted. Kroening

interposed an answer in which he set forth the attachment, the judgments, the execution levy, the execution sale, and the registration of all thereof, and asked that his rights thereunder be adjudged to be prior and superior to any and all rights of plaintiff or of the Frieds in the property.

The court ordered judgment granting the relief asked for by plaintiff and the Frieds, and barring Kroening from any right, title or interest in or lien on the property. Kroening appealed from an order denying a new trial.

The purpose of the Torrens law is to establish an indefeasible title free from any and all rights or claims not registered with the registrar of titles, with certain unimportant exceptions, to the end that anyone may deal with such property with the assurance that the only rights or claims of which he need take notice are those so registered. The law was framed to accomplish that purpose; and it establishes rules in respect to registered land which differ widely from those which apply in the case of unregistered land. It provides that the holder of a certificate of title of registered land "shall hold the same free from all incumbrances, and adverse claims, excepting only" those noted on the last certificate of title and certain other specified rights or claims not important here. G. S. 1923 (2 Mason, 1927) § 8271. It declares:

"No voluntary instrument of conveyance purporting to convey or affect registered land, except a will, and a lease for a term not exceeding three years, shall take effect as a conveyance, or bind or affect the land, but shall operate only as a contract between the parties, and as authority to the registrar to make registration. The act of registration shall be the operative act to convey or affect the land." G. S. 1923 (2 Mason, 1927) § 8293.

The next section [8294] provides that all instruments of every kind and nature purporting to affect the title "shall be notice to all persons from the time" they are registered with the registrar. The deeds under which plaintiff claims and the contract for deed under which the Frieds claim were not registered, and therefore by force of the statute they had no effect on the title and created

no rights in the land. Abrahamson v. Sundman, 174 Minn. 22, 218 N. W. 246; Elder v. Elwell, 175 Minn. 144, 220 N. W. 415.

Respondents contend that appellant could seize and sell under his judgment only the actual interest which Peterson had in the property, and that Peterson had conveyed the property and therefore had no interest therein. By reason of the statute neither the deed nor the contract executed by Peterson operated to convey any interest in the property, and his title remained unaffected thereby, at least so far as third parties were concerned. But even if those instruments operated as conveyances, respondents' claim is untenable. The rule invoked was the rule at common law and is still the rule in those cases which do not come within the recording acts. Farmers & Merchants State Bank v. Stageberg, 161 Minn. 413, 201 N. W. 612; Scott v. Marquette Nat. Bank, 173 Minn. 225, 217 N. W. 136. But the present case comes within the recording acts. G. S. 1923 (2 Mason, 1927) § 8226, provides that every unrecorded conveyance shall be void as against "any attachment levied thereon, or any judgment * * * against the person in whose name the title to such land appears of record;" and § 8195 of the same chapter provides that the term conveyance shall "include every instrument in writing whereby any interest in real estate is created, aliened, mortgaged, or assigned."

These provisions were in force long before the enactment of the Torrens law. The Torrens law provides that attachments, judgments and levies under executions which would affect the title to unregistered land under existing laws, "shall, in like manner, affect the title to registered land" if registered with the registrar of titles. G. S. 1923 (2 Mason, 1927) §§ 8248, 8294. Appellant, having duly registered his attachment, judgments, execution levy and certificate of sale, acquired valid rights in the property superior to any and all rights under the unregistered instruments held by respondents, unless the record discloses facts which preclude him from asserting such rights.

Under the law as it exists, except as affected by the Torrens act, an attachment or judgment obtained by a creditor who had notice

of an unrecorded conveyance does not take precedence over such conveyance. Lamberton v. Merchants Nat. Bank, 24 Minn. 281; Wilcox v. Leominster Nat. Bank, 43 Minn. 541, 45 N. W. 1136, 19 A. S. R. 259. Respondents stress the fact that the Frieds were in possession under their contract and cite numerous authorities to the effect that a person dealing with land is chargeable with notice of the rights of the one in possession. This is the unquestioned rule here and elsewhere as to unregistered land; but the Torrens law has changed this rule as to registered land, and under that law possession of registered land is not notice of any rights under an unregistered deed or contract for deed. Abrahamson v. Sundman, 174 Minn. 22, 218 N. W. 246. That act abrogates the doctrine of constructive notice except as to matters noted on the certificate of title. We think however that it does not do away with the effect of actual notice, although it undoubtedly imposes the burden of proving such notice upon the one asserting it. It may not be amiss to note that the rights of a tenant occupying the premises under a lease for a term not exceeding three years do not depend on notice, but are absolute and stand on the same basis as taxes and other claims or rights not cut off by failure to register them.

Respondents assert that appellant had actual notice of their rights, and the court so found; but the evidence goes no further than to show that he knew the property was occupied although he had never seen it. He had no communication of any kind with the respondents, and there is not a word in the record tending to show that he had received any notice of their claims or of the instruments under which they claimed.

The only evidence upon which notice can be imputed to appellant is the testimony of Peterson. Peterson stated that when appellant's attorney served a notice upon him to appear in supplementary proceedings he informed the attorney that he had sold this property five years before. The attorney denies that Peterson made any such statement; but under the findings we must accept Peterson's claim as correct. Notice to appellant's attorney who was conducting the proceedings for him was notice to him. 1 Dunnell, Minn.

Dig. (2 ed.) § 670, and cases cited. But Peterson's statement is not claimed to have been made until nearly two months after the registration of the attachment and therefore could not affect the lien obtained by the attachment, nor the rights acquired under the judgment and execution sale by which that lien was enforced. The statement was made however before the registration of the judgments. No attachment had been issued in the second action, and that claim did not become a lien on the property until the registration of the judgment, which was after notice to appellant's attorney of the sale by Peterson.

We reach the conclusion that the rights of appellant in the property under the attachment, judgment and execution sale in the first action are prior and superior to any and all rights of the respondents, but that the rights of appellant under the judgment in the second action are inferior and subordinate to the rights of the respondents.

The order is reversed.

