In the Matter of the Petition of OCWEN FINANCIAL SERVICES, INC. In Relation to Certificate of Title No. 1036612 issued for Land in the County of Hennepin and State of Minnesota and Legally Described as: Lot 19, Block 7, "F.A. Savage's Portland Ave. Addition to Minneapolis."

No. C2–02–350.

Court of Appeals of Minnesota.

Aug. 20, 2002.

Gary B. Bodelson, Minneapolis, MN, for appellant Ocwen Financial Services, Inc.

J. Kevin McVay, Bloomington, MN, for respondent Spolinsky Jacox.

Considered and decided by RANDALL, Presiding Judge, HANSON, Judge, and HUDSON, Judge.

## O P I N I O N

HUDSON, Judge.

In this mortgage-priority dispute involving registered Torrens property, appellant argues that the district court erred in ruling that respondent's mortgage had priority over appellant's mortgage, because (a) appellant's mortgage was registered before respondent's mortgage; (b) the settle-

ment statement unambiguously identified respondent's mortgage as the "second mortgage"; and (c) even if the settlement statement was ambiguous as to mortgage priority, the ambiguity presents a genuine issue of material fact necessitating a trial. Because Minnesota Torrens law provides that the registration document number is conclusive evidence of the order in which mortgages are filed, and the settlement statement was not ambiguous as to mortgage priority, we reverse and remand.

## FACTS

In August 1998, respondent Spolinsky Jacox owned a home on which Knutson Mortgage Corporation held a mortgage in the amount of $22,852.18. The property is Torrens property. On August 29, 1998, Jacox entered into a contract for the sale of her home to Stefanni Moore for $79,000. Jacox and Moore signed a purchase agreement which was later amended to provide that Jacox "will carry a note with [Moore] in the amount of $19,975 for 5 years for $50.00 a month." The purchase agreement also contained a provision specifying that "[Moore] will get a mortgage."[1] Moore obtained additional financing for the balance of $59,925 from appellant, Ocwen Financial Services, Inc.

The parties closed on September 25, 1998. At the closing, Jacox learned for the first time that Ocwen would only agree to take a mortgage if Jacox also agreed to take a mortgage in the amount of $19,975 in lieu of the purchase agreement. Jacox agreed, and accordingly Moore issued a mortgage to Jacox for $19,975, in addition to the mortgage she issued to Ocwen for $59,925. The parties never discussed mortgage priority. Moore and Jacox me-

---

1. As Moore was the buyer and borrower, this document should have read, "Moore will *give* a mortgage."

morialized the financing arrangement by signing a United States Department of Housing and Urban Development Settlement Statement (HUD–1 Settlement Statement). The HUD–1 Settlement Statement indicated that Jacox's mortgage was a second mortgage.

On November 24, 1999, the closing agent took the two mortgages to the Hennepin County Registrar of Titles to be recorded. Both mortgages were recorded as registered at 11:00 a.m. that day. However, the Ocwen mortgage was registered first, and was given the document number 3228150; the Jacox mortgage was given one document number higher: 3228151.

Moore later defaulted on Ocwen's mortgage and Ocwen foreclosed by advertisement; no actual notice of the foreclosure was sent to Jacox. Ocwen acquired the property at the foreclosure sale on March 3, 2000. Ocwen later commenced a proceeding subsequent under Minn.Stat. § 508.58 to issue a new certificate of title identifying Ocwen as the owner and reflecting that the property was free of encumbrances. Jacox filed an answer claiming that her mortgage had priority and that the property was therefore still subject to her mortgage. The parties each moved for summary judgment. The district court granted summary judgment in favor of Jacox, holding that the Jacox mortgage had priority over Ocwen's mortgage.

The district court noted that, at closing, Jacox was represented by her father, and that an Ocwen employee acted as the closing agent and presented closing documents drafted by Ocwen—including the HUD–1 Settlement Statement. The district court found that the HUD–1 Settlement Statement was ambiguous with respect to mortgage priority and therefore should be construed against Ocwen as the drafter. Ocwen appealed.

## ISSUES

1. Did the district court err as a matter of law in granting summary judgment for Jacox where the Torrens property registration number demonstrated that Ocwen's mortgage was recorded first?

2. Did the district court err in ruling that the HUD–1 Settlement Statement was ambiguous as to mortgage priority?

## ANALYSIS

"On an appeal from summary judgment, we ask two questions: (1) whether there are any genuine issues of material fact and (2) whether the lower courts erred in their application of the law." *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990) (citation omitted). We "view the evidence in the light most favorable to the party against whom judgment was granted," *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993) (citation omitted), and need not defer to a trial court's decision on a question of law. *Frost Benco Elec. Ass'n v. Minn. Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

### I.

**Torrens Registration**

Minn.Stat. § 508.47, subd. 1 (2000), provides that while owners of Torrens property may mortgage the land with any form of legally sufficient conveyance, only the act of registering the mortgage will actually bind or affect the land; the mortgage itself only operates as a contract between the parties and as authority to the registrar to make registration. *Id.* A mortgage takes effect upon the title only from the time of registration. Minn.Stat. § 508.54 (2000). Indeed, the necessity of registration to create an interest in the property is what distinguishes the Torrens law from the recording act for abstract

property. *Fingerhut Corp. v. Suburban Nat'l Bank*, 460 N.W.2d 63, 65 (Minn.App.1990). Because Ocwen's mortgage was registered first, as evidenced by the lower registration number assigned to its mortgage, we conclude that Ocwen's mortgage had priority over the Jacox mortgage, and therefore the district court erred as a matter of law in granting summary judgment for Jacox.

■ Jacox argues that Ocwen's mortgage could not have priority because both mortgages were "time-stamped" by the registrar at 11:00 a.m. on November 24, 1999; thus, Jacox argues, the mortgages were simultaneously recorded. We disagree. Although the date/time stamp at the registrar's office shows that both mortgages were registered at 11:00 a.m., they could not have actually been stamped at the same time—even if the time differential was only seconds. Most importantly, however, Ocwen's mortgage was assigned document number 3228150, and the Jacox mortgage was assigned the higher document number 3228151 (emphasis added). The registration document numbers are conclusive evidence of the order in which the mortgages were filed and demonstrate that Ocwen's mortgage was registered first.

■ Jacox contends, however, that even if Ocwen's mortgage was registered first, Ocwen was not a bona fide purchaser at the foreclosure sale because Ocwen had actual notice of the Jacox mortgage. Jacox's argument is not persuasive.

■ Minnesota is a race-notice state, which means that a purchaser who has actual, implied, or constructive notice of inconsistent outstanding rights of others is not a bona fide purchaser entitled to protection under Minnesota's Recording Act. *Minnesota Cent. R. Co. v. MCI Telecommunications Corp.*, 595 N.W.2d 533, 537 (Minn.App.1999), *review denied* (Minn. Sept. 14, 1999). Thus, as Jacox correctly notes, there is no need for parties to race to the Registrar of Titles because mortgage priority as established by a filing order is defeated by actual notice or knowledge of a superior mortgage or encumbrance.

In this case, however, Ocwen had no knowledge of an encumbrance inconsistent with its interest in the property because the Jacox mortgage was clearly a "second mortgage" as designated on the HUD–1 Settlement Statement. Ocwen did have actual notice of the prior Knutson mortgage, but the HUD–1 Settlement Statement shows that the Knutson mortgage—which would have been superior to Ocwen's had it survived—was being satisfied as part of the closing. The fact that Ocwen had notice of the Jacox *second* mortgage does not affect Ocwen's status as a bona fide purchaser at the foreclosure sale. Because Ocwen's mortgage was registered first and Ocwen was a bona fide purchaser, we conclude that Ocwen's mortgage had priority over the Jacox mortgage.

## II.

### HUD–1 Settlement Statement

■ Jacox also claims, and the district court held, that the HUD–1 Settlement Statement was ambiguous with regard to mortgage priority. Therefore, Jacox argues, the ambiguity should be construed against Ocwen and this court should affirm the district court's order granting summary judgment to Jacox. We disagree.

■ The initial determination of whether a contract is ambiguous is a question of law; this court is not bound by the district court's determination. *State by Crow Wing Env't Prot. Ass'n, Inc., v. City of Breezy Point*, 363 N.W.2d 778, 781

(Minn.App.1985), *review denied* (Minn. May 20, 1985). While courts may look at parol evidence to determine the parties' bargain if required by some contractual ambiguity, where there is no ambiguity in the written terms of a contract, construction by a district court or an appellate court is inappropriate; the contract is interpreted according to its terms. *North Star Center, Inc. v. Sibley Bowl, Inc.*, 295 Minn. 424, 426, 205 N.W.2d 331, 332 (Minn. 1973); *Rick v. B.D.M.S., Inc.*, 347 N.W.2d 65, 66 (Minn.App.1984). A writing is ambiguous if, judged by its language alone and without resort to parol evidence, it is reasonably susceptible of more than one meaning. *Metro Office Parks Co. v. Control Data Corp.*, 295 Minn. 348, 351, 205 N.W.2d 121, 123 (Minn.1973).

Here, the HUD–1 Settlement Statement was divided into two columns, labeled "Summary of Seller's Transaction" and "Summary of Borrower's Transaction." In the Jacox seller's-transaction column, the amount of Jacox's mortgage ($19,975) was deducted from the gross amount due to Jacox and designated as "2ND MTG." In the Moore borrower's-transaction column, the amount of Ocwen's mortgage ($59,925) was deducted from the gross amount due from Moore and listed as "Principal Amount of new loans." The Jacox mortgage was listed below that, again as "2ND MTG."

When the contract is read as a whole, we cannot escape the conclusion that the HUD–1 Settlement Statement unambiguously established that Jacox's mortgage was a second mortgage and was subordinate to Ocwen's mortgage. Although Jacox argues that the "2ND MTG" designation referred to its position with respect to the Knutson mortgage, as previously stated, the HUD–1 Settlement Statement makes clear that this is not the case. The "2ND MTG" designation appeared in both columns in the amount of $19,975, while the Knutson mortgage was only relevant to Jacox's transaction because that mortgage was being paid off as part of the closing. The HUD–1 Settlement Statement plainly shows that the Knutson mortgage payoff of $22,852.18 resulted in a reduction of the money paid directly to Jacox. As Ocwen correctly states, the Knutson mortgage did not even exist after the distribution of the funds at the closing. Simply put, the Jacox mortgage could not have been second to a mortgage that no longer existed by virtue of the closing itself.

The plain meaning of the term "2ND MTG" as it appears on the HUD–1 Settlement Statement is that Jacox's mortgage was a second mortgage to the mortgage issued to Ocwen at the time of the closing. Accordingly, we hold that the district court erred in finding that the HUD–1 Settlement Statement was ambiguous as to mortgage priority. Because we find that the HUD–1 Settlement Statement was not ambiguous, we need not decide the other issues addressed by the district court, namely whether it is appropriate to construe ambiguities against the drafter in this case, or whether Ocwen should be considered the drafting party.

Lastly, Jacox argues that the equities compel this court to conclude that her mortgage had priority. Although we are concerned about the apparent unequal bargaining position of the parties and Jacox's apparent confusion at the closing as to the priority of her mortgage, this concern does not alter the fact that under Minnesota Torrens law, the registration document number is conclusive evidence of the order in which the mortgages are filed. Therefore the Ocwen mortgage—which was registered first—takes priority over the subsequently-registered Jacox mortgage. Similarly, we acknowledge that Ocwen

could easily have provided Jacox actual notice of the foreclosure and thus afforded Jacox an opportunity to purchase the property at the foreclosure sale. But Minnesota law does not require actual notice of a foreclosure sale. *See* Minn.Stat. § 508.57 (2000) (stating the sufficiency of notice by advertisement for the foreclosure of registered property).

## DECISION

Minn.Stat. § 508.54 (2000) provides that a mortgage takes effect upon the title only from the time of registration. Because the registration document filing numbers conclusively demonstrate that Ocwen's mortgage was registered and recorded before Jacox's mortgage, and the HUD–1 Settlement Statement unambiguously indicated that Jacox's mortgage was a second mortgage, the district court erred as a matter of law in granting summary judgment for Jacox and finding that Jacox's mortgage had priority. We reverse and remand the district court's order with instructions to the district court to order the Registrar of Titles to cancel the existing certificate of title and to issue a new certificate of title, indicating that Ocwen is the fee owner of the subject property and that the property is free of all encumbrances set forth in the prior certificate.

**Reversed and remanded.**