In re the Matter of the Petition of **MORTGAGE ELECTRONIC REGIS-TRATION SYSTEMS, INC. as nomi-nee for Aegis Wholesale Corporation in Relation to Property Registered in Certificate of Title No. 1209988, issued for land in the County of Hennepin and State of Minnesota, legally de-scribed as: Lot 7, Block 1, Turtle Creek Third Addition.**

No. A12–1050.

Court of Appeals of Minnesota.

April 22, 2013.

---

Matthew B. Roberts, Brett M. Larson, Richard A. Saliterman, Saliterman & Siefferman, P.C., Minneapolis, MN, for Appellants Kurt Pflug and Lisa Pflug.

Katherine M. Melander, Jeffrey A. Scott, Brian W. Varland, Coleman, Hull & Van Vliet, PLLP, Minneapolis, MN, for Respondent MERS.

Considered and decided by CLEARY, Presiding Judge; HOOTEN, Judge; and SMITH, Judge.

## OPINION

HOOTEN, Judge.

Appellants challenge the district court's grant of summary judgment and order amending the certificate of title to appellants' Torrens property so that respondent's mortgage precedes appellants' deed in priority. Because we conclude that the district court correctly applied the equitable doctrine of instantaneous seisin, we affirm.

## FACTS

On February 23, 2005, Appellants Kurt and Lisa Pflug granted a mortgage to Wells Fargo Bank to secure a corresponding $400,000 note to purchase a home in St. Bonifacius. Appellants had difficulty keeping up with their mortgage payments, and in April of 2007, devised a plan to "sell" the home to Kurt Pflug's sister, Karin Pflug, because she could qualify for and obtain a mortgage with better payment terms. Karin, as a straw-buyer, was then to convey the home back to appellants and herself with the understanding that appellants would maintain and live in the home and make the mortgage payments. Kurt provided the loan application paperwork to Karin, who filled it out and gave it back to him. Karin's application for a mortgage was approved by Aegis Wholesale Corporation. Appellants and Karin dispute whether appellants agreed to assume the mortgage payments. Karin claimed that appellants agreed to assume the mortgage and remove Karin from the title within two years, whereas appellants presented an affidavit stating that "[t]here had been some discussions about us assuming the mortgage at some point in the future, but we never agreed on any terms."

The closing date of the transaction was May 24, 2007, at which time appellants and Karin met at appellants' home with a nota-ry to execute several documents, including the three documents at issue here. These documents included a deed from appellants to Karin; a deed from Karin to appellants and herself, as joint tenants; and a mortgage on the property executed only by Karin. Karin and appellants also signed, among other documents, a settlement statement detailing closing costs and indicating that a new loan was being taken out that would satisfy the old loan.

The documents themselves do not indicate the precise order in which they were signed. Karin stated that she did not remember the order in which the documents were signed, but Kurt stated in an affidavit that:

> I distinctly remember the order in which the various instruments were signed and executed. First, my wife and I conveyed the property by warranty deed to Karin Pflug. Second, Karin Pflug conveyed the property to Lisa, Karin, and myself as joint tenants. After that, Karin signed a mortgage on the property. The reason I remember that this was the order in which the documents were signed is because my wife and I finished the conveyances in the kitchen of the house with Karin and the notary. After we were finished, my wife and I left the room so that Karin could finish the mortgage transaction on her own. I did not need to be with her at this time, because Lisa and I never intended to have any obligations under the mortgage, which we did not sign.

However, Karin stated in an affidavit that "the refinancing plan, as it was understood by me, was for [appellants] to deed their home to me, then for me to obtain a mortgage on the home, and then for me to deed a 2/3[rds] interest in the home back to" appellants. Karin's affidavit also states that she did not know that her mortgage

would not encumber the entire property and that she would not have entered into the transaction had she known she would have been ultimately responsible for the entire mortgage without the security of the home. There is little evidence from before the transactions indicating the intent of the documents. However, the record contains a purchase agreement dated May 10, 2007, which states in type that "[s]eller to gift 20% down payment for Buyer," and, in unknown handwriting, "[a]lso 3% seller contributions." The purchase agreement lists a purchase price of $530,000; when 20% is subtracted from that amount, the remaining $424,000 is the amount of debt incurred by Karin in this transaction.

After the closing, the documents were sent to a title company in Baltimore, Maryland. An employee of the title company sent the documents to the Hennepin County Registrar of Titles to be registered. The employee indicated that it was his intent for the deed from appellants to Karin to be registered first, the mortgage signed by Karin to be registered second, and the deed from Karin to appellants and herself to be registered last. In communicating this intent, the employee wrote "2 of 3" on the mortgage document, near the return address for the title company, but did not write anything on the other documents. According to the stamps on the documents themselves, all three were registered at precisely the same minute, but the registration numbers given to the documents indicate that the deed from appellants to Karin was registered first, the deed from Karin to appellants and herself was registered second, and Karin's mortgage was registered third. Upon return of the documents, the employee saw that the mortgage was registered third, after the two deeds, and called the registrar of titles to address the issue, but was not able to resolve the situation. As a result, the property's certificate of title indicates that the mortgage only encumbers Karin's one-third interest in a joint tenancy on the property. This has the effect of limiting the interest on which the respondent mortgagee can now foreclose to only an undivided one-third of the property, while appellants hold two-thirds of the property free and clear of the mortgage.

On December 15, 2008, appellants' application to assume the mortgage was denied. By February 5, 2010, the mortgage was in default and Karin retained an attorney to try to transfer the mortgage and loan to appellants. On June 22, 2010, Karin executed a power of attorney so that Kurt could undertake negotiations on her behalf in an attempt to reduce the monthly mortgage amount to an affordable level. Because no refinancing was obtained, Karin revoked the power of attorney because she "concluded that [appellants] ha[d] no intention of any meaningful cooperation in connection with their loan." Notably, Karin stated in an affidavit that "since the commencement of the current action, I believe the goal of [appellants] has changed from one of attempting to renegotiate the terms of the existing mortgage, to the goal of escaping liability for the new mortgage undertaken by me at the request of" appellants.

On March 18, 2011, respondent Mortgage Electronic Registration Systems, Inc., (MERS), as the nominee of the mortgagee Aegis Wholesale Corporation, filed a petition to reverse the order of the documents on the certificate of title and declare that the mortgage covered the entire property, rather than just Karin's one-third interest. The Examiner of Titles' report recommended making the changes upon sufficient proof of the basis for the change.

The district court issued an order to show cause why the changes should not be

made, to which appellants objected on largely the same grounds as are advanced on appeal. Appellants and respondent moved for summary judgment.[1] After a hearing, the district court granted summary judgment to respondent, ordered that Karin's mortgage be "prior and superior to all right, title and interest of" appellants, and ordered that a new certificate of title be issued reflecting that the mortgage was a valid encumbrance on appellants' interest in the property. The district court determined that appellants were not good-faith purchasers because they had actual notice of respondent's mortgage on the property. The district court concluded that "[i]t would be inequitable and unjust to allow [appellants] to own two-thirds of the Property free and clear with [respondent]'s Mortgage covering only a one-third interest in the Property when [appellants] engineered the plan to sell the Property to Karin Pflug and used Karin Pflug as a vehicle to obtain the loan secured by the Mortgage." This appeal follows.

## ISSUES

I. Did the district court apply the incorrect standard of proof or make erroneous findings of fact?

II. Did the district court err in applying Minn.Stat. § 508.25?

III. Did the district court err in applying equity?

## ANALYSIS

The district court shall grant summary judgment if, based on the entire record, there are no genuine issues of material fact and either party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. This court conducts a de novo re-view of the district court's summary judgment decision, to determine whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 77 (Minn.2002).

### I. Did the district court apply the incorrect standard of proof or make erroneous findings of fact?

■ Appellants argue that the district court should have applied the clear-and-convincing standard of proof to respondent's petition to amend the certificate of title, and that several of the district court's findings of fact are incorrect. Appellants cite *Yliniemi v. Mausolf*, 371 N.W.2d 218, 222 (Minn.App.1985), in support of their assertion that the clear and convincing standard applies to this case. *Yliniemi* applies the clear-and-convincing standard, but addresses reformation of a deed between two parties for non-Torrens property. *Id.* Because the current dispute does not involve reformation of a deed, but only a corrected registration of the mortgage and deeds, *Yliniemi* is factually and legally distinguishable and is not controlling.

We acknowledge that Minnesota courts have not commented on the standard of proof applicable to cases in which one party seeks to amend a certificate of title for Torrens property, known as "proceedings subsequent to initial registration." *See, e.g., In re Collier*, 726 N.W.2d 799, 803 (Minn.2007) (noting no standard of proof in a proceeding to determine the priority of interests subsequent to initial registration); *Fid. & Deposit Co. of Md. v. Riopelle*, 298 Minn. 417, 422, 216 N.W.2d 674, 677–78 (1974) (addressing whether proceedings subsequent to initial registration can challenge a certificate of sale without

---

1. Karin Pflug was separately represented throughout these proceedings, but filed her own affidavit in support of respondent's summary judgment motion.

noting a standard of proof); *Minnetonka State Bank v. Minn. State Sunshine Soc'y,* 189 Minn. 560, 560–63, 250 N.W. 561, 561–62 (1933) (noting no standard of proof in "a proceeding to alter the registrar's certificate of title" to show an easement). Similarly, the applicable statutory language does not specify a standard of proof. *See* Minn.Stat. § 508.71, subds. 1–2 (2012).

■ Court rules applicable to proceedings regarding the registration of titles indicate that "[t]he procedure and the method of determination shall be the same as in the trial of similar issues in civil actions or proceedings," and that "[i]ssues raised in [proceedings subsequent to initial registration] shall be set for trial and disposed of the same as similar issues in other civil proceedings." Minn. R. Gen. Pract. 210, 214. Civil proceedings "typically employ the preponderance standard because society has a minimal concern with the outcome of private suits" and because "the parties should share the risk of error in roughly equal fashion." *C.O. v. Doe,* 757 N.W.2d 343, 353 (Minn.2008) (quotations omitted). We see no reason to deviate from this standard, particularly in light of the longstanding presumption that "where the Legislature does not provide a standard of proof 'for statutorily-created causes of action,' this silence reflects 'a signal that the legislature intended the preponderance of the evidence standard' to apply." *Weiler v. Ritchie,* 788 N.W.2d 879, 883 (Minn.2010) (quoting *C.O.,* 757 N.W.2d at 353); *see also State by Humphrey v. Alpine Air Prods., Inc.,* 500 N.W.2d 788, 790 (Minn.1993). Thus, we conclude that the preponderance-of-the-evidence standard applies to this type of case.

■■ However, we do not believe that the district court's failure to note the application of that standard requires reversal. This is because "an error in the standard of proof is only reversible error if it results

in prejudice to the other party." *Kornberg v. Kornberg,* 542 N.W.2d 379, 387 n. 3 (Minn.1996); *see also T.E.S. Constr., Inc. v. Chicilo,* 784 N.W.2d 392, 398 (Minn.App. 2010) (applying Minn. R. Civ. P. 61 when an incorrect standard of proof has been used), *review denied* (Minn. Sept. 21, 2010); Minn. R. Civ. P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."). In this case, the facts are largely undisputed and, because the case was decided on summary judgment, all facts are viewed in favor of the nonmoving party. Thus, to the extent that the district court erred in failing to apply the preponderance of the evidence standard, that error was harmless.

Appellants also argue that several of the district court's findings of fact are incorrect. Specifically, they dispute findings 10, 12, and 13.

10. Petitioner's closing instructions required that Karin Pflug be solely vested in title at the time the Mortgage was recorded. The closing instructions state: "All persons signing both the note and the deed of trust, mortgage, or other required security instrument must be vested in title...."

. . . .

12. Both the title commitment and title insurance policies issued at closing required that Kar[i]n be solely vested in title at the time the Mortgage was recorded. The title commitment to [respondent] provides:

REQUIREMENTS

2. Instruments necessary to create the estate or interest to be insured must be properly executed, delivered and duly filed for record.

DEED: Kurt O. Pflug and Lisa M. Pflug to Karin Pflug

Mortgage: Karin Pflug to [respondent]

13. The title insurance policy to Kar[i]n insures [sic] identifies Karin as the owner of the Property in "fee simple."

Appellants contend that these findings overstate the language of the documents they represent, while respondent argues that these findings are true and that any incorrect statements in these findings do not alter the ultimate resolution of the case.

The quotations in findings 10 and 12 are correct, but the quoted sections do not support the statements in the first part of each finding. For both findings, the quoted documents simply require that Karin be vested in title and do not require that she be "solely" vested in title. As such, the first part of findings 10 and 12 incorrectly extrapolates and interprets the quoted language. However, finding 13 does not make any such extrapolative leaps from the documents. Rather, it simply restates that Karin has a fee simple ownership in the property, which does not necessarily require that she be the sole fee simple owner of the property. Thus, appellants are correct that findings 10 and 12 contain unsupported statements of the facts. But these extrapolations do not render the findings as a whole, or the district court's ultimate legal conclusion, erroneous.

## II. Did the district court err in applying Minn.Stat. § 508.25?

■ The property at issue is Torrens property and subject to a particular statutory scheme. For abstract property, documents forming a chain of title are recorded and the burden is on an interested person to ascertain the true state of title for themselves. *See Collier*, 726 N.W.2d at 803–04. On the other hand, each transfer of an interest in Torrens property is memorialized on a single certificate of title, which clearly indicates the state of the title. *Id.* at 804. "Unlike the abstract system, where evidences of title are recorded, under the Torrens system there is a judicial proceeding whereby title itself is registered." *Hersh Props., LLC v. McDonald's Corp.*, 588 N.W.2d 728, 734 (Minn.1999) (emphasis omitted). The Torrens system is meant to alleviate the burden of ascertaining the state of title by memorializing all relevant interests on a certificate of title. *See Collier*, 726 N.W.2d at 804. Thus:

> Every person receiving a certificate of title pursuant to a decree of registration and every subsequent purchaser of registered land who receives a certificate of title in good faith and for a valuable consideration shall hold it free from all encumbrances and adverse claims, excepting only the estates, mortgages, liens, charges, and interests as may be noted in the last certificate of title in the office of the registrar . . . .

Minn.Stat. § 508.25 (2012).

■ The Torrens act "abrogates the doctrine of constructive notice except as to matters noted on the certificate of title," but "does not do away with the effect of actual notice, although it undoubtedly imposes the burden of proving such notice upon the one asserting it." *In re Juran*, 178 Minn. 55, 60, 226 N.W. 201, 202 (1929); *see also* Minn.Stat. § 508.48(a) (2012) (stating that even a reference to an unregistered interest in a registered instrument does not constitute actual or constructive notice). "[U]nder section 508.25, a purchaser of Torrens property who has actual knowledge of a prior, unregistered interest in the property is not a good faith purchaser." *Collier*, 726 N.W.2d at 809; *see also In re Alchemedes/Brookwood, Ltd. P'ship*, 546 N.W.2d 41, 42 (Minn.App.1996) (addressing notice for Torrens property

but finding no actual or constructive notice), *review denied* (Minn. June 7, 1996); *Nolan v. Stuebner*, 429 N.W.2d 918, 922–23 (Minn.App.1988) (finding that Torrens property owners had actual notice of an easement so that they were not good-faith purchasers), *review denied* (Minn. Dec. 16, 1988). Actual notice, as included in the Torrens statute's good-faith requirement, is only satisfied by actual knowledge. *In re Willmus*, 568 N.W.2d 722, 726 (Minn. App.1997), *review denied* (Minn. Oct. 21, 1997). Thus, the party must "actually know the interest in the land exists." *Id.*

■■■ There is substantial evidence in this case that appellants had actual notice that Aegis Wholesale Corporation had a mortgage on the property. Kurt Pflug stated that he left the room at closing so that Karin could execute the mortgage by herself; Kurt asked Karin to enter this transaction; Kurt provided the paperwork for the mortgage application to Karin; Kurt submitted the paperwork and told Karin that it had been approved; Kurt and Lisa both signed a purchase agreement with Karin that referenced a mortgage; and Kurt and Lisa both signed the settlement statement that indicated the amount of the new loan and the taxes to be paid for the new mortgage on the property. Under these circumstances, in which appellants had actual notice of the mortgage, they are precluded from being good-faith purchasers.

However, appellants argue that, under the Torrens statute, actual notice of another interest only precludes good-faith purchaser status for those that have "actual knowledge of a *prior, unregistered* interest in the property." *Collier*, 726 N.W.2d at 809 (emphasis added). Appellants argue that their interest is protected because the mortgage was executed subsequent to, and registered after, the deeds in this case. Appellants are correct that the deed was

registered first, providing a presumptive priority to the deed, and the only evidence of when the documents were signed, Kurt's affidavit, indicates that the deeds were signed first. *See In re Ocwen Fin. Servs., Inc.*, 649 N.W.2d 854, 857 (Minn.App.2002) (holding that Torrens property registration document numbers "are conclusive evidence of the order in which the mortgages were filed"), *review denied* (Minn. Nov. 19, 2002); *see also* Minn.Stat. § 508.54 (2012) ("[A] mortgage ... shall be registered and take effect upon the title only from the time of registration.").

■■■ The district court concluded that Karin's mortgage was a purchase-money mortgage, subject to the longstanding rule that "the mortgage and deed of purchase do not need to be executed on the same day," rather, if they are " 'part[ ] of one continuous transaction, and so intended to be,' " the " 'instruments should be given contemporaneous operation in order to promote the intent of the parties.' " *Gores v. Schultz*, 777 N.W.2d 522, 528 (Minn.App.2009) (quoting *Stewart v. Smith*, 36 Minn. 82, 84, 30 N.W. 430, 431–32 (1886)), *review denied* (Minn. Mar. 16, 2010). "A purchase-money mortgage takes priority over other liens created by the mortgagor through the equitable doctrine of instantaneous seisin, 'under which the title becomes encumbered with the mortgage the moment it passes from seller to purchaser.' " *Slattengren & Sons Props., LLC v. RTS River Bluff, LLC*, 805 N.W.2d 279, 282 (Minn.App.2011) (quoting *Kloster–Madsen, Inc. v. Tafi's, Inc.*, 303 Minn. 59, 65, 226 N.W.2d 603, 608 (1975)), *review granted* (Minn. Dec. 13, 2011) *and appeal dismissed* (Minn. Mar. 7, 2012). The district court applied these principles in entering summary judgment on behalf of respondent, and we therefore review de novo whether the district court erred in

this application of the law. *STAR Ctrs., Inc.,* 644 N.W.2d at 77.

Appellants rely heavily on *Ocwen* because it states that the registration number is determinative. We note that the parties cite no case in which Minnesota courts have applied the equitable doctrine of instantaneous seisin in a case involving Torrens property, even when Minnesota courts would typically note the doctrine in analogous cases involving abstract property. For example Minnesota courts have noted the contemporaneous transaction and instantaneous seisin doctrines when dealing with two mortgages on the same abstract property. *See, e.g., Olson v. Olson,* 203 Minn. 199, 200–02, 280 N.W. 640, 640–41 (1938) (noting both doctrines) *withdrawn and decided on other grounds,* 203 Minn. 199, 281 N.W. 367 (1938); *Slattengren & Sons Props., LLC,* 805 N.W.2d at 281–84 (same). But when the same type of dispute arose as to a Torrens property, this court made no mention of the doctrines. *Ocwen Fin. Servs.,* 649 N.W.2d at 857. Rather, *Ocwen* relied on the registration number as the determining factor, though there were other clear indications that the mortgage registered second was also a secondary interest. *Id.* at 857–58 (noting that the mortgage registered second was indicated as "2ND MTG" on the settlement statement). Therefore, these doctrines would not have been determinative in *Ocwen.* Under these circumstances in this case, we believe the district court's application of these doctrines was proper.

■ First, Torrens property is not excused from broader principles of property law simply because it is Torrens property. The Torrens act states that:

> Registered land shall be subject to the same burdens and incidents which attach by law to unregistered land. This chapter shall not operate to relieve registered land or the owners thereof from

any rights, duties, or obligations incident to or growing out of the marriage relation, or from liability to attachment on mesne process, or levy on execution, or from liability to any lien or charge of any description, created or established by law upon the land or the buildings situated thereon, or the interest of the owner in such land or buildings.

Minn.Stat. § 508.02 (2012). This provision has existed since the initial enactment of the Torrens Act. *See Armstrong v. Lally,* 209 Minn. 373, 375, 296 N.W. 405, 405–06 (1941) (quoting the original section 8248 of the Torrens Act, now codified at Minn. Stat. § 508.02). But the doctrines of instantaneous seisin and contemporaneous operation predate the Torrens system in Minnesota. *See Schoch v. Birdsall,* 48 Minn. 441, 443, 51 N.W. 382, 382 (1892) ("The seisin being instantaneous, the lien of plaintiff's mortgage took precedence of any lien, general or specific, created by her."); *Stewart,* 36 Minn. at 84, 30 N.W. at 432 ("[T]he fact that the mortgage was executed pursuant to an agreement made prior to the execution of the deed of purchase has been the controlling consideration upon which the mortgage has been given precedence, although not in fact executed until some time after the execution of the deed."); *Jones v. Tainter,* 15 Minn. 512, 15 Gil. 426 (1870) ("As it is that with which the land is purchased, it is in fact the purchase money, and must be held to be such ... which gave the precedence spoken of to a mortgage so securing purchase money, at the time when the mortgage in this case was executed." (emphasis omitted)); *see also Collier,* 726 N.W.2d at 803–04 (discussing the purpose and enactment of the Torrens Act in 1901). Arguably, if the legislature, in 1901 or any time since, desired to preclude this rule in Torrens cases, it could have explicitly done so, as it did with adverse possession in that

same section. Minn.Stat. § 508.02; 2008 Minn. Laws ch. 341, art. 3, § 2, at 1411 (amending section 508.02 to indicate that "the common law doctrine of practical location of boundaries applies to registered land").

Second, some principles are clearly applicable to both Torrens and abstract property. *See, e.g., Mavco, Inc. v. Egginck*, 739 N.W.2d 148, 158 n. 7 (Minn.2007) (applying the principles of two Torrens cases to the question of whether mechanic's liens can subordinate mortgages executed before, but recorded after, the liens). Perhaps the most important among the principles that apply to both Torrens and abstract properties are the principles of equity. *Finnegan v. Gunn*, 207 Minn. 480, 482, 292 N.W. 22, 23 (1940) ("Nothing in the Torrens system indicates that the ancient concepts of equity are not applicable[.]"). This may be best illustrated by *In re Collier*, which involved a purchaser of Torrens property from the owner at a significantly discounted price because he realized that the previous mortgage holder had not properly registered its interest. 711 N.W.2d 826, 827–28 (Minn.App.2006), *rev'd*, 726 N.W.2d 799 (Minn.2007). This court held that the purchaser was a good-faith purchaser because the mortgage was not actually an encumbrance on the property until it was registered and therefore actual knowledge of that interest was immaterial. *Id.* at 831. But the supreme court reversed this court's decision, holding that a good-faith purchaser "cannot have actual knowledge of previous, unregistered interests." *Collier*, 726 N.W.2d at 808. In doing so, the supreme court approved the application of "principles of equity when a result under the Torrens Act violates notions of justice and good faith." *Id.* Clearly, when the mechanical application of the Torrens Act would result in an absurdity, Minnesota courts can apply equity and longstanding common-law princi-

ples to achieve a better result. *See* Minn. Stat. § 645.17(1) (2012) ("[T]he legislature does not intend a result that is absurd, impossible of execution, or unreasonable[.]"). Further, the supreme court noted "that some degree of flexibility makes the Torrens Act more useful and efficient." *Collier*, 726 N.W.2d at 808.

Finally, failing to apply these doctrines in this case would subject mortgagees to the possibility that their interest may be precluded by imprecise execution and registration of the relevant documents and would limit their ability to protect their interest through a security instrument. Introducing this uncertainty into the mortgage market would be imprudent. For this reason, and because we are confident that these principles are properly applied to create an equitable result, we conclude that respondent's interest was contemporaneous to the purchase and attached to Karin's interest in the property immediately upon its creation. Therefore, the district court did not err in holding that appellants' actual notice of respondent's interest precludes them from being good-faith purchasers under Minn.Stat. § 508.25.

### III. Did the district court err in applying equity?

In addition to the equitable doctrine of instantaneous seisin, both sides argue that equity supports their respective positions. Appellants, relying on *Citizens State Bank v. Raven Trading Partners, Inc.*, 786 N.W.2d 274, 277 (Minn. 2010), argue that equity is not available to respondent because it waited too long to bring its claim. In *Citizens State Bank*, the mortgagee seeking equitable subrogation received its mortgage back from the recordation office because the check for the recordation fee was for the wrong amount. *Id.* at 276. The mortgagee wait-

ed 38 days to re-record its mortgage on the property, during which time another mortgagee recorded its interest in the property. *Id.* The supreme court held that the mortgagee "simply neglected to act in a timely manner," and that this negligence precluded the application of equitable subrogation. *Id.* at 286.

In *Citizens State Bank,* the party seeking equitable relief could have prevented the damaging act itself by vigilantly and timely acting. This case is materially different, because respondent was not untimely in seeking to register, and thereby protect, its interest. But a dilatory failure to prevent damage is not analogous to waiting to seek relief from damage already done.[2] Moreover, while respondent arguably failed to do enough to prevent the damage from occurring, it is unclear what respondent could have done to address the damage, short of filing precisely the type of petition that initiated these proceedings. Appellants do not argue that respondent is not within the statutory period for seeking relief, but appellants' argument would prevent the application of equity unless they brought suit immediately. We cannot agree with that conclusion, and we agree with the district court that equity favors respondent, particularly when balanced against appellants' involvement in the creation of the relevant interests.

## DECISION

In order to amend the certificate of title in proceedings subsequent to initial registration of Torrens property, district courts should apply the preponderance-of-the-evidence standard of proof. Since the material evidence in this case was essentially undisputed, and our determination is primarily based upon principles of law, we

conclude that the district court's failure to explicitly apply this standard of proof was harmless.

Since respondent's mortgage and appellants' deed were signed as one continuous transaction, respondent's mortgage, in accordance with the doctrines of contemporaneous transaction and instantaneous seisin, attached to and encumbered appellants' interest in the real property. Thus, the district court correctly held that notwithstanding the order of registration set forth on the Torrens certificate, appellants had actual notice of respondent's mortgage at the time of its creation and are therefore not good-faith purchasers of real property unencumbered by respondent's mortgage. Accordingly, the district court did not err in ordering an amendment of the certificate of title so as to accurately depict the prior interest of respondent's mortgage.

**Affirmed.**

---

**2.** Notably, seeking judicial relief immediately would have prevented appellants' attempts to

refinance and assume the mortgage.