STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1078

Merceil Burkhalter,
Appellant,

vs.

Dedrick D. Mays, et al.,
Defendants,

Building Trades Federal Credit Union,
Respondent.

**Filed April 11, 2016**
**Affirmed**
**Ross, Judge**

Hennepin County District Court
File No. 27-CV-13-17620

Luke D. Grundman, Halla Y. Elrashidi, Justin H. Perl, Mid-Minnesota Legal Aid, Minneapolis, Minnesota (for appellant)

Daniel M. Duffek, PFB Law, Professional Association, St. Paul, Minnesota (for respondent)

Considered and decided by Ross, Presiding Judge; Johnson, Judge; and Reyes, Judge.

**S Y L L A B U S**

I.    The protection afforded to good-faith "purchasers" under Minnesota Statutes section 508.25 (2014) encompasses good-faith encumbrancers.

II.   A lender who secures a loan to purchase Torrens property is not disqualified from protection as a good-faith encumbrancer under Minnesota Statutes section 508.25 simply because the lender secured the loan after it became aware of circumstances on which the ostensible seller might eventually base an equitable-mortgage claim.

## OPINION

**ROSS**, Judge

Family members of a homeowner who was unable to obtain a loan to avoid foreclosure obtained a loan and mortgage on her behalf. The homeowner facilitated the deal by executing a quitclaim deed ostensibly transferring ownership to the family members and agreeing to make the mortgage payments, but she fell behind. When the family members sought to evict her, she sued, asking the district court to declare that she had conveyed only an equitable mortgage to the family members and that the family members' legal mortgage to the lender should be reformed to identify her as the sole borrower and mortgagor. The district court refused to reform the lender's legal mortgage because the lender encumbered the property in good faith under Minnesota Statutes section 508.25, and a jury found that the family members had only an equitable mortgage but not ownership. The homeowner appeals the dismissal of her mortgage-reformation claim against the lender, arguing that the lender did not act in good faith because it got its mortgage knowing facts that could support her equitable-mortgage claim. We affirm because a lender's knowledge of facts that might support a hypothetical claim that an equitable mortgage exists does not constitute actual notice of an existing mortgage.

### FACTS

Merceil Burkhalter and her husband Edwin purchased a Minneapolis home in 1968. They obtained two 2007 loans secured by mortgages from Northside Neighborhood Housing Services and a third loan with a junior mortgage from Building Trades Federal

2

Credit Union. Burkhalter fell behind on her mortgage payments after Edwin died in 2011. Northside foreclosed on its mortgages, and the sheriff administered a sale in July 2012.

Burkhalter sought a loan from Building Trades during the six-month redemption period. Building Trades refused to extend Burkhalter a loan even if she added to the loan application her daughters and her grandson, Dedrick Mays. Building Trades suggested a different approach—a loan only to Burkhalter's family members and not including Burkhalter. In October 2012, those family members (grandson Mays, daughter Glenda Martin, and Glenda's husband James Martin) applied for a $113,000 loan to be secured by a mortgage on Burkhalter's home, and Building Trades granted the loan. The loan was enough for Burkhalter to redeem the home from foreclosure for about $35,000, extinguish Building Trades's outstanding $74,334 junior mortgage, and leave about $25,000 in equity based on the home's $140,000 appraised value.

The parties closed the loan in November 2012. A Building Trades loan officer administered the closing, which Mays, Glenda and James Martin, and Burkhalter all attended. The loan officer drafted a quitclaim deed for the property. Some dispute exists as to whether Burkhalter asked the loan officer to draft the deed or the loan officer drafted it on her own initiative. Burkhalter executed the quitclaim deed, which expressly transferred all Burkhalter's interest to the family members. Building Trades received from the family members a promissory note for $113,000 and a mortgage on the property. The settlement statement used at closing was entitled, "Optional Form for Transactions without Sellers." The family members and Burkhalter anticipated that Burkhalter would stay in the home

3

and would make the $800 monthly mortgage payments and cover the cost of all utilities, insurance, property taxes, and maintenance.

Family turmoil upset the arrangement the next summer and multiple-front litigation ensued after Burkhalter failed to keep up on the mortgage payments. Burkhalter obtained a harassment restraining order against Mays, Glenda Martin, and another family member. Mays began an eviction proceeding to oust Burkhalter from the home. And Burkhalter filed the action now on appeal, alleging unjust enrichment and seeking a declaratory judgment of her ownership based on her theory that the quitclaim transaction resulted only in an equitable mortgage and did not convey ownership to the family members. She also asked the district court either to declare Building Trades's mortgage void or to equitably reform the mortgage and note to name Burkhalter as the sole mortgagor and obligor.

All parties moved for summary judgment. At the hearing, Burkhalter changed her relief request, asking the court only to add her to the list of mortgagors, rather than to replace the family members altogether as she had originally pleaded. The district court denied the family members' motion for summary judgment, identifying material fact disputes about the existence of an equitable mortgage between Burkhalter and the family members. But it granted Building Trades's motion for summary judgment, holding that even if Burkhalter prevails at trial against the family members on her equitable-mortgage theory, Building Trades's formal, legal mortgage remains intact because Building Trades acted as a good-faith encumbrancer under Minnesota Statutes section 508.25. The district court also held alternatively that Burkhalter did not present sufficient evidence to prove that the Building Trades mortgage should be equitably reformed.

4

The claims between Burkhalter and the family members proceeded to trial. The jury found that they intended the quitclaim-deed transfer to create an equitable mortgage. As the result of the district court's summary judgment decision and the jury's verdict, Burkhalter owns the property in fee simple subject to an equitable mortgage held by the family members, and Building Trades holds a promissory note for its loan to the family members, which is secured by a superior legal mortgage on the property. Burkhalter appeals the district court's grant of summary judgment favoring Building Trades, calling into question whether the district court properly determined that no fact disputes prevent judgment as a matter of law and dismissed Burkhalter's claim to reform Building Trades's legal mortgage.

**ISSUE**

Is Building Trades disqualified from protection as a good-faith purchaser of Torrens property under Minnesota Statutes section 508.25 if, when it extended to the family members the secured loan, it knew of circumstances that could support an eventual equitable-mortgage claim by Burkhalter?

**ANALYSIS**

Burkhalter argues that because she introduced evidence tending to prove that Building Trades was aware of those facts that could support her eventual claim that she created only an equitable mortgage rather than conveyed ownership during her quitclaim transaction, she is entitled to a jury trial on the question of whether Building Trades had actual knowledge of the equitable mortgage. That knowledge, argues Burkhalter, disqualifies Building Trades from being deemed a good-faith encumbrancer under

5

Minnesota Statutes section 508.25. The district court held that Building Trades's knowledge of those mere claim-supporting facts is immaterial because a lender cannot as a matter of law have actual knowledge of a property interest that does not yet exist and whose existence has not yet even been claimed.

Because this is a summary judgment appeal, we consider the evidence in the light most favorable to Burkhalter, the party against whom summary judgment was entered, and we review de novo whether any genuine issues of material fact exist and whether the district court erred in applying the law. *STAR Ctrs., Inc. v. Faegre & Benson*, *L.L.P.*, 644 N.W.2d 72, 76–77 (Minn. 2002). The appeal highlights the intersection of two, usually unrelated legal precepts: the common-law equitable-mortgage doctrine and the statutory good-faith purchaser protection. The parties assert that this intersection presents a matter of first impression, and our look at the caselaw supports that assertion.

Based on the jury verdict, the district court applied common-law equity principles and held that Burkhalter's ostensible quitclaim transfer of ownership to the family members actually conveyed only a mortgage interest. This holding comports with Minnesota's long-recognized standard that "[a] deed absolute in form but intended by the parties as security is regarded in equity as a mortgage." *Albright v. Henry*, 285 Minn. 452, 461, 174 N.W.2d 106, 111 (1970) (quoting *City of Shakopee v. Kopp & Assocs., Inc.*, 280 Minn. 511, 513, 159 N.W.2d 901, 903 (1968)). The parties' intent is the doctrine's lynchpin. And here, the jury decided that Burkhalter and the family members intended the quitclaim deed to create only a security interest.

6

Before the jury decided this equitable-mortgage question, however, the district court dismissed Burkhalter's claim that the court should equitably reform Building Trades's legal mortgage to add Burkhalter as a mortgagor.[1] It did so based on the good-faith purchaser provision of the Torrens law, which states in relevant part as follows:

> Every person receiving a certificate of title pursuant to a decree of registration and every subsequent purchaser of registered land who receives a certificate of title in good faith and for a valuable consideration shall hold it free from all encumbrances and adverse claims, excepting only the estates, mortgages, liens, charges, and interests as may be noted in the last certificate of title in the office of the registrar.

Minn. Stat. § 508.25; *see also In re Collier*, 726 N.W.2d 799, 808 (Minn. 2007) (holding that section 508.25 provides good-faith purchasers protection against prior, unregistered interests in Torrens property).

We must first decide if the statute, which expressly protects purchasers, also protects mortgagees, like Building Trades. The statute refers to a person who has "receiv[ed] a certificate of title" and a "subsequent purchaser of registered land who receives a certificate of title." The district court and the parties assumed without discussion that the statute applies to mortgage lenders in the same way it applies to purchasers. The assumption is well founded. The sections of the Minnesota Statutes governing Torrens registration do not define the word "purchaser." But Minnesota's general recording provision for non-Torrens,

---

[1] Although the district court also purportedly decided the question of whether an equitable mortgage exists between Building Trades and Burkhalter (holding that one does not exist), the parties assure us that no party ever asserted that such a mortgage exists. We therefore do not address that part of the district court's order.

7

abstract property does define "purchaser," and it defines it broadly so as to include "every person to whom any estate *or interest in* real estate is conveyed for a valuable consideration." Minn. Stat. § 507.01 (2014) (emphasis added). Building Trades's mortgage is an interest in real estate that it acquired for valuable consideration. *See Dahmes v. Indus. Credit Co.*, 261 Minn. 26, 34, 110 N.W.2d 484, 489 (1961) ("[P]ast indebtedness as well as future advances actually made are sufficient consideration for a mortgage."). Although no Minnesota court has published an opinion that addresses whether section 508.25 applies to a mortgagee as a purchaser, the Eighth Circuit Court of Appeals has considered the question. It reasoned that a Minnesota court would conclude that section 508.25 implicitly includes encumbrancers within the express class of purchasers. *See Capitol Indem. Corp. v. West Fargo Plumbing & Heating, Inc.*, 145 F.3d 998, 999 (8th Cir. 1998). The *Capitol Indemnity* court surveyed other jurisdictions and determined that they uniformly construe the word "purchaser" in recording statutes as including mortgagees. *Id.* It reasoned that the common law and statutory background demonstrate that good-faith mortgagees should be treated within the good-faith purchaser provision for Torrens property, and it saw no countervailing reason to read the statute narrowly so as to expose good-faith secured lenders to losses from which good-faith purchasers are protected. *Id.*

We find the Eighth Circuit's reasoning and conclusion persuasive. Based on the broad definition of "purchaser" in the analogous section 507.01, the lack of any indication that the legislature intends the term to carry a more restrictive definition in chapter 508 than in 507, and the consistent approach of those courts that have considered the issue, we

hold that Minnesota Statutes section 508.25's protection of good-faith purchasers encompasses good-faith encumbrancers.

The statute's protection of good-faith encumbrancers of Torrens property is intentionally broader than the protection afforded encumbrancers of abstract property. The statute protects lenders unless they extended valuable consideration to encumber the Torrens property despite their having *actual* notice of a competing property interest. By contrast, the kind of notice required to defeat a good-faith-purchaser defense as to abstract property is merely *implied* or *constructive* notice that a prior interest encumbers the land. *See MidCountry Bank v. Krueger*, 782 N.W.2d 238, 244 (Minn. 2010) ("A purchaser with actual, implied, or constructive notice of the outstanding rights of others is not entitled to the protection of the Recording Act." (quotation omitted)). Because the effectiveness of a Torrens system rests on a purchaser's ability to trust the certificate of title to reveal all competing interests, the Torrens Act abrogates the doctrine of constructive notice. *See In re Juran*, 178 Minn. 55, 60, 226 N.W. 201, 202 (1929). The purchaser of Torrens property can therefore prevail as a good-faith purchaser, defeating any previous, unregistered interests about which the purchaser had no *actual* knowledge. *In re Collier*, 726 N.W.2d at 808.

The district court held, and Building Trades argues, that Building Trades cannot have received actual notice of Burkhalter's previous, unregistered property interest—the equitable mortgage—because that interest did not exist until the jury later decided the issue at trial. Burkhalter counters that it is enough that Building Trades had actual notice of the circumstances on which she could later rely to prove an equitable-mortgage and ownership

9

claim, and she asks us to reverse so that she can establish at trial that Building Trades had this requisite knowledge. The district court is correct; no trial is necessary.

Building Trades could not, as a matter of logic, have possessed actual notice of the equitable mortgage between Burkhalter and the family members, because actual notice of any "encumbrances and adverse claims" cannot exist until the encumbrance or the claim exists. When a purchaser (including an encumbrancer) becomes aware of circumstances on which an ostensible seller *might* later claim that her otherwise binding sale is really an equitable mortgage, the purchaser is at most on actual notice only that a claim or encumbrance *might* later exist. Our holding is informed by a review of the principles of the Torrens system as well as caselaw discussing the scope of actual notice.

Minnesota adopted the Torrens system in 1901 to promote efficiency in the transfer of real property and to provide purchasers certainty of good title. *See Hersh Props., LLC v. McDonald's Corp.*, 588 N.W.2d 728, 733 (Minn. 1999). Instead of requiring purchasers or other interested persons to mine the sometimes voluminous and archaic written evidence of the transactions affecting real property (like the burden on purchasers of abstract property), the Torrens system allows persons to register their ownership interest and receive a controlling certificate of title that is free of "any and all rights or claims not registered with the registrar of titles." *Id.* (quotation omitted). It allows a purchaser of Torrens property to look no further than the certificate of title to discover any transactions affecting the property because the certificate describes all but seven statutorily declared ownership interests. *See Mill City Heating & Air Conditioning Co. v. Nelson*, 351 N.W.2d 362, 365 (Minn. 1984). The supreme court has been wary of creating exceptions not listed

10

by statute. *See id.* (declining to create an exception to interests listed in the certificate of title by providing rights to purchasers under a purchase agreement but not in possession).

The supreme court's only exception beyond the seven listed by statute is the clarifying exception we discuss today. That is, it has held that a good-faith purchaser is protected if he lacks actual notice of an interest not memorialized on the certificate of title. *See In re Collier*, 726 N.W.2d at 808; *see also In re Juran*, 178 Minn. at 60, 226 N.W. at 202 (stating much earlier that the Torrens Act "does not do away with the effect of actual notice"). The limits of the actual-notice exception are undefined. *See In re Collier*, 726 N.W.2d at 809 (declining to "define the outer contours of actual notice" and limiting the holding to the facts of the case). But caselaw informs us that the actual-notice exception is narrow.

In *In re Mortgage Electronic Registration Systems, Inc.*, for example, we held that a couple had actual notice of an unregistered mortgage signed by the husband's sister on a home that was conveyed to the couple after the mortgage was signed. 835 N.W.2d 487, 495 (Minn. App. 2013). We observed that both the husband and wife had signed the purchase agreement that expressly referenced the mortgage. *Id.* And in *Nolan v. Stuebner*, we held that landowners had actual notice of an easement because their attorney's title opinion had informed them that the certificate of title was clouded by an easement. 429 N.W.2d 918, 922 (Minn. App. 1988), *review denied* (Minn. Dec. 16, 1988). Unlike these cases, in which documents establishing the existence of an established, current property interest were provided to the purchasers, here no documents memorialized any other extant interest or claim to an interest.

11

More importantly, knowledge merely of facts that might give rise to an equitable-mortgage claim is akin to the knowledge that raises only the suspicion that a competing interest exists. This is the sort of knowledge that tends to call for further inquiry, but it has long been deemed insufficient to constitute actual notice. *See Kane v. State*, 237 Minn. 261, 268, 55 N.W.2d 333, 337 (1952) (holding that under the Torrens system it is unnecessary for a good-faith purchaser to inspect a plat to determine whether encumbrances not listed on the previous owner's certificate of title exist); *see also In re Willmus*, 568 N.W.2d 722, 725–26 (Minn. App. 1997) (holding that the mention of a registered land survey, which showed an easement, in the certificate of title did not put the purchaser on actual notice where the purchaser would need to do additional research to discover the easement), *review denied* (Minn. Oct. 21, 1997). We add that even if the standard were less protective and Building Trades knew circumstances that created a duty to inquire at the time they extended the secured loan, no amount of inquiry could have uncovered any document putting Building Trades on actual notice of an existing encumbrance or even of an existing claim— again, none existed.

We recognize that an equitable mortgage, once judicially determined, operates on the notion that the parties in fact transacted so as to maintain the extant ownership unaltered. *See Albright*, 285 Minn. at 460, 174 N.W.2d at 111 ("[W]hen the real nature of a transaction between the parties is that of a loan . . . whatever the form of the instrument of conveyance taken as the security, it is treated in equity as a mortgage."). But "a deed absolute in form is presumed to be . . . a conveyance." *Ministers Life & Cas. Union v. Franklin Park Towers Corp.*, 307 Minn. 134, 137–38, 239 N.W.2d 207, 210 (1976). We

believe that an equitable mortgage (which can overcome the presumption of a conveyance) exists only in theory but not in fact—at least not as a fact that can be actually noticed under the Torrens law—unless the party who has the right to file a successful claim to ownership by equitable mortgage has done so. *Cf. id.* at 138, 239 N.W.2d at 210 (stating that the intention of the parties to create an equitable mortgage is ascertained "by the written memorials of the transaction and the attendant facts and circumstances").

We do not attempt to decide what minimum facts might constitute actual notice of an equitable-mortgage so as to defeat a lender's good-faith encumbrancer defense. But the facts allegedly known to Building Trades are insufficient. And although our opinion rests entirely on our application of the law rather than on any likely collateral consequences, we observe that adopting Burkhalter's theory could create a chilling effect on institutional loans to good-Samaritan acquaintances trying to assist despairing, foreclosed homeowners, like Burkhalter, who might not otherwise be able to redeem. The district court properly concluded that Burkhalter presented insufficient evidence to support her contention that Building Trades had actual notice of a competing property interest so as to defeat its position as a good-faith encumbrancer.

## D E C I S I O N

Because Building Trades did not possess actual knowledge of Burkhalter's interest in the property based on her yet-unclaimed equitable-mortgage, we affirm the district court's holding that Building Trades is entitled to summary judgment by virtue of its standing as a good-faith purchaser.

**Affirmed.**

13